## THE PENNSYLVANIA COMPANY v. HENSIL.

NEGLIGENCE.—*Action Against Railroad Company for Injury.—Street and Railroad Crossing.—City Ordinance.—Evidence.*—In an action by the injured party, against a railroad company, to recover damages for injuries alleged to have been inflicted upon the plaintiff, by the defendant's train of cars, through the negligence of the defendant's employees running the train, the complaint alleged the negligent construction, by the defendant, of a number of parallel railroad tracks across a public street at a point where the plaintiff was attempting to cross when injured; also the negligent condition of the sidewalk crossing such tracks; also the failure of the defendant to keep a watchman at such crossing, as required by an ordinance of the common council of the city within which were such street and crossing ; also the failure of such employees to sound the whistle and ring the bell of the engine when approaching the crossing. The failure to sound the whistle having been proved by the plaintiff, the defendant offered in evidence another ordinance of such council, prohibiting the sounding of whistles and ringing of bells on engines while passing through the city.

*Held,* that the exclusion of such evidence was erroneous.

SAME.—*Instruction.—Violation of Ordinance*—It was erroneous to instruct the jury, in such case, that, if there was a city ordinance requiring the defendant to keep a flagman at said crossing, " then the defendant could not fail or neglect to comply with its requirements, without being guilty of · negligence," if such negligence be not connected with the alleged injury.

SAME.—*Negligence must be Proximate Cause of Injury.*—While such a failure is negligence, *per se,* the instruction should have treated upon the question as to whether such negligence was a proximate cause of the injury.

SAME.—*Negligence Usually a Matter of Fact, rather than one of Law merely.*—It was error to instruct, in such action, that the commission, by the defendant and its agents, of the acts alleged in the complaint as constituting negligence, *ipso facto,* rendered the defendant guilty of negligence.

From the Allen Circuit Court.

*A. Zollars, F. T. Zollars* and *J. Brackenridge,* for appellant.

*W. H. Coombs, J. Morris* and *R. C. Bell,* for appellee.

NIBLACK, C. J.—The complaint in this case was in two paragraphs.

The first averred that the defendant, the Pennsylvania

Company, the appellant here, was, on the 30th day of October, 1876, engaged in operating a railroad running through and across the public streets of the city of Fort Wayne; that a number of tracks and side-tracks, pertaining to said railroad, had been negligently constructed across Hanna street, a public street of said city, crossing and intersecting each other near said street, so that it was difficult for persons passing upon such street to determine upon which track an approaching train might cross it; that on that day, while the plaintiff, Anna Hensil, an infant eight years old, who is the appellee here, was passing along and upon the east side of said street, without negligence on her part, the defendant was negligently running its cars and engine back and forth over and across such street, and negligently ran a train of cars upon and over her, and thereby so injured one of her limbs that it had to be amputated; that, at the time, the whistle on the engine was not sounded, nor the bell rung, nor was there any watchman on the crossing, to keep her off the tracks, or to warn her of the approaching train; that there was an ordinance of the city of Fort Wayne requiring a watchman to be kept at that crossing, for the purpose of warning persons of approaching trains. A copy of the ordinance referred to was unnecessarily filed with the complaint.

The second was much like the first, except that it averred that the defendant was operating the Pittsburgh, Fort Wayne and Chicago Railroad, and that the planks on the side-walk on the east side of Hanna street, where the plaintiff had to cross, and between the rails of the railroad tracks, had been carelessly laid and were out of repair; that for that reason, and in consequence of the whistle not being sounded, nor the bell rung, and there being no watchman at the crossing, the plaintiff did not see the approaching train until she fell down, and it struck her as above stated.

The defendant demurred separately to .each paragraph of the complaint, but both paragraphs were held to be sufficient. An answer in general denial was then filed.

A jury returned a general verdict for the plaintiff, for seven thousand five hundred dollars, together with answers to numerous special interrogatories submitted to them at the request of the parties respectively.

The defendant moved for a judgment in its favor upon the answers of the jury to the special interrogatories, but that motion was overruled. Motions for a new trial and in arrest of judgment were also successively overruled, and judgment was rendered against the defendant upon the general verdict.

It is claimed on behalf of the appellant, that the demurrer ought to have been sustained to the second paragraph of the complaint, but in our estimation no valid objection to that paragraph has been shown.

The facts of this case, as they were made to appear on the trial, may, in general terms, be stated as follows:

On the evening of October 30th, 1876, the appellee, who lived with her parents south of the appellant's railroad, and who was attending school north of that road, and was then about eight years old, was passing over the railroad on the east side of Hanna street, in the city of Fort Wayne, on her return home from school. There were seven or eight tracks or side-tracks belonging to the road and running near to, and generally parallel with, each other, across Hanna street at that point. When the appellee, in her attempt to cross the railroad, had reached perhaps the fifth track, counting from the north, she was struck by a train of cars, consisting of an engine, a tender and two box-cars, then being slowly backed over Hanna street from the west, and one of her legs was thereby so broken and crushed that it had to be amputated. The crossing was necessarily a somewhat dangerous one. There

was no sidewalk over the railroad on the west side of the street. The several side-tracks approached the street from the west in curved lines, and so crossed and intersected each other as to make it difficult for an inexperienced person to determine upon which track a train from the west would cross the street, although the tracks and all trains upon them might have been seen for the distance of nearly, if not quite, a quarter of a mile, looking west from the crossing. The engine of the train which struck the appellee was at the west end of the train. The engineer was on the engine, and a brakeman was on the tender, but there was no brakeman on the forward car at the east end, nor was any one upon either of the box-cars, to look out in advance or to notify persons of danger. On the east side of the street there were some rows of coal bins or boxes, almost touching the sidewalk. These bins were about five feet high, and tracks of the railroad ran between them. At the time the appellee approached the crossing, there were an engine and one or two cars upon one of the tracks between these coal bins, the cars being loaded with coal and the engine blowing off steam. The appellant had a flagman at the crossing, as required by an ordinance of the city, for the protection of persons passing and repassing in that vicinity. Just before the collision a wagon and a balked team of horses were standing on the street near the east side, and not far from the fifth railroad track, around which the flagman, and many other persons, were gathered, and to which they were giving their attention. The flagman did not see the appellee until she was on the track, only a few feet in front of the cars, when he hallooed at her to go back; and in attempting to go back, either in consequence of a defect in the plank between the rails or of a misstep, she fell on the track and was injured as hereinbefore stated. A larger school girl who accompanied the appellee, but was in advance of her, passed over all the tracks safely.

An ordinance of the city of Fort Wayne was read in evidence by the appellee, which provided, amongst other things, that a flagman should be kept and maintained by the proper railroad companies, at all railroad crossings on Hanna street, "whose duty it shall be to signal persons travelling in the direction of any or either of the crossings aforesaid, and warn them of the approach of any locomotive, engine or other impending danger."

The appellee introduced evidence tending to show that the whistle of the locomotive, attached to the train which injured her, was not sounded as the train approached the Hanna street crossing.

The appellant, in defence, offered to read in evidence an ordinance of the city of Fort Wayne prohibiting the sounding of a locomotive whistle during the ordinary transportation of trains through that city, but the court, over the exception of the appellant, refused to permit the proposed ordinance to be read.

No satisfactory reason for the exclusion of the ordinance thus offered in evidence has been suggested, and we confess our inability to recall any principle on which its exclusion can be defended, in view of the appellant's alleged failure to sound the whistle, contained both in the complaint and in the appellee's evidence.

The concluding portion of the third instruction, given in this case to the jury at the request of the appellee, was as follows:

"You may also inquire whether or not the city of Fort Wayne had, by an ordinance, required the defendant to keep a flagman at said crossing, to notify persons of the approach of cars and engines to said crossing, and warn them of danger; for, if there was such an ordinance, then the defendant could not fail or neglect to comply with its requirements, without being guilty of negligence."

The appellant sharply criticises as much of the instruc-

tion as is thus set out, and argues against the doctrine implied by the language thus used.

The force and effect of a city ordinance regulating the running and management of railroad trains, within the limits of the city, upon a civil action against a railroad company, like the case before us, is a question upon which the authorities are not entirely in accord. But the weight of authority is overwhelmingly to the effect that the failure to perform any duty imposed either by a statute or an ordinance is negligence *per se*, and entitles an injured party to recover, provided the failure was a proximate cause of the injury. Thompson Negligence, 419, 1232; Shearman & Redf. Negligence, secs. 484, 485.

Therefore, to have made the third instruction, given as above, properly and strictly applicable to this case, the jury ought, also, to have been informed by it in some way, that, to entitle the appellee to recover for a failure to comply with the ordinance referred to, such failure must be shown to have been a proximate cause of the injury complained of.

The appellee contends that a fair construction of the two preceding instructions, when taken in connection with this third instruction, did so inform the jury, but whether that construction can be sustained, we will not now enquire, as the conclusion we have reached upon the case in other respects makes such an enquiry at present unnecessary.

One thing, however, in this connection, ought always to be borne in mind, and that is, in all actions for negligent injuries, it is not enough to show that the defendant has been guilty of negligence. It must also be made to appear that the imputed negligence was a proximate cause of the injury sued for. That fundamental rule seems to have been, to some extent at least, lost sight of in several of the instructions given in this cause.

By the sixth instruction, given at the request of the appellee, the court said:

" If you find from the evidence that the train that struck the plaintiff, if one did strike her, consisted of two cars and an engine; that the two cars were being backed over the street; that there were no brakes or brakemen on the front car as it passed over the crossing, and no one in advance of the cars; that no bell was rung as the train was backing over the street; that the crossing was in a populous part of the city and much frequented by people continually passing over it—then you should find the defendant guilty of negligence."

The facts enumerated in this instruction may or may not have constituted negligence, depending upon other facts which may have had some relation to the alleged injury to the appellee. As an instruction, it confounded that which, under the circumstances, only tended to prove negligence, with negligence itself. It assumed to make a matter of law out of facts which the jury were entitled to consider in connection with other facts which had been submitted to them.

The cases in which the question of negligence can be thus withdrawn from the jury are of comparatively rare occurrence. It is only when the circumstances of a case are such that the standard of duty is fixed and certain, or when the measure of duty is defined by law and is the same under all circumstances, or when the negligence is so clearly defined and palpable that no verdict could make it otherwise, that the court is authorized to make the question of negligence one of law and not of fact. Thompson Negligence, 1236; Shearman & Redfield Negligence, sec. 11.

The court evidently erred in giving this sixth instruction.

This case affords a rather remarkable instance of what

we too often meet with in modern practice, and that is, an over-instructed jury. Nineteen instructions were given at the request of the appellee, four were given by the court on its own motion, and twenty-seven were given at ·the suggestion of the appellant. As these instructions will be necessarily reconsidered, and possibly very greatly condensed, upon another trial, we will not further comment upon them in detail.

The judgment below is reversed, with costs, and the cause remanded for a new trial.