No. 392.

## THE CHICAGO, ST. LOUIS AND PITTSBURGH RAILROAD COMPANY v. FENN.

PRACTICE.—*Special Verdict Based on One Paragraph of Complaint.—Overruling Demurrer to Another Paragraph.*—Where it appears that a special verdict was based upon one paragraph of a complaint, the overruling of a demurrer to another paragraph of the complaint, even if error, is harmless.

RAILROAD.—*Care to Prevent Injury to Stock.*—A railroad company is bound to exercise ordinary care to prevent injury to an animal upon a highway crossing without the owner's fault.

SAME.—*Injury to Stock.—Signals at Highway Crossings.—Contributory Negligence.*—The omission of the employees of a railroad company to give the statutory signals at a highway crossing is conclusive evidence of negligence upon the part of the railroad company, and gives rise to a right of action for injuries to animals upon highway crossings, without contributory negligence upon the, part of the owner, resulting from a failure to give the statutory signals.

SAME.—*Injury.—How Caused.—Question of Fact for Jury.*—The question as to whether the omission to give the signals at the highway crossing caused the injury to the animal is one of fact for the jury.

From the Howard Circuit Court.

*M. Bell, W. C. Purdum, C. H. Burchenal* and *J. L. Rupe,* for appellant.

*J. C. Blacklidge, C. C. Shirley, B. C. Moon, J. O'Brien* and *C. Wolfe,* for appellee.

CRUMPACKER, J.—Fenn sued the railroad company for killing a horse at a public highway crossing. The complaint is in two paragraphs. The first states a cause of action under the statute for the alleged negligence of the defendant in failing to give the statutory signals at the highway crossing, whereby plaintiff's animal was killed; the other seems to declare upon a common law liability for negligence upon the part of the defendant in running its train at a great and unusual rate of speed, and in failing to give stock warnings at the highway crossing, by reason whereof plaintiff's ani-

mal was killed. Both paragraphs allege that the injury occurred without the plaintiff's fault.

A separate demurrer filed to each paragraph was overruled, and the company answered by general denial. The cause was tried by a jury, and a special verdict returned, upon which plaintiff was awarded judgment.

Counsel for appellant first insist that the court erred in overruling the demurrer to the second paragraph of complaint.

As we view the special verdict, it must be considered upon the theory of a statutory liability alone, and as based exclusively upon the first paragraph of complaint. This being the case, there could be no reversible error in overruling the demurrer to the second paragraph, because it would be harmless. *Taylor* v. *Wootan*, 1 Ind. App. 188. For this reason we do not feel required to consider the question arising upon the demurrer.

The special verdict is as follows :

" We find that on the 24th day of April, 1890, the defendant, the Chicago, St. Louis and Pittsburgh Railroad Company, owned and operated through the village of Terre Hall, in Howard county, Indiana, a line of railroad, and that in said village the same is intersected by a gravel road running east and west. The said railroad at that point runs from southeast to northwest ; that on the evening of said 24th day of April, 1890, the plaintiff, David Fenn, caused a horse owned by him to be securely hitched in his barn in said village, and near said crossing, and the door of said barn closed and latched ; that during the night following, by some means unknown to us, and wholly without the knowledge or intent of the plaintiff, the halter with which said horse was tied became loosed, and said door opened. Said horse by this means was allowed to escape from the stable and go upon said railroad track at said crossing ; that on said night defendant's passenger train and locomotive, in charge of its employees, agents and servants, passed over, upon and along

said track from the southeast to the northwest, and over said crossing at the rate of speed of about fifty miles per hour, that being about twenty miles per hour faster than the usual, regular schedule time made on said road by said train; that when passing said crossing plaintiff's said horse was struck by said locomotive, with train of cars attached, and killed; that the view of said track southeast of said crossing is greatly obstructed by the proximity of buildings to said crossing and near said track, so that the approach of a train from that direction can only be seen for a few feet unless observed from the center of the track; that in approaching said crossing the defendant's employees and servants did not, nor did any of them, sound the whistle of said locomotive at a distance of not more than 100 rods nor less than 80 rods distant; nor did they, or any of them, cause the bell of said locomotive to be rung until within fifty feet from said crossing; that said agents and employees wholly neglected to give any signal of the approach of said train, such as to be heard by said horse at said crossing in time to enable said horse to escape collision with said train; that said horse was worth at the time he was killed the sum of one hundred and fifty dollars.

"If, upon the foregoing facts, the law is with the plaintiff, then we find for the plaintiff, and assess his damages at one hundred and fifty dollars. If the law is with the defendant, then we find for the defendant."

Section 4020, R. S. 1881, requires every locomotive engine operating in this State to be equipped with a suitable whistle and a bell, and that such whistle shall be sounded distinctly three times at a point not less than eighty nor more than one hundred rods before reaching highway crossings, and the bell shall be rung continuously from such point until the crossing is reached.

Section 4021 provides, among other things, that the company shall be liable in damages to any one who shall be in-

jured in person or property by reason of the omission of such crossing signals.

It is contended on behalf of appellant that there can be no recovery in this case because the animal was unlawfully at large at the time of the injury. The common law rule, requiring the owner of an animal to keep it within his own enclosure, prevails in this State, and there being no finding in this case that animals were permitted to be at large by order of the board of commissioners, we must presume that no such privilege existed.

In common law actions against railroad corporations for negligently killing animals, the fact that the owner suffered them to be at large without authority of law is contributory negligence and constitutes a good defence. This doctrine, however, has no application in actions under the statute for failure to fence the track.

Negligence in managing and restraining domestic animals is the absence of such methods and means of care as would be employed by men of ordinary prudence, and, measured by this rule, the appellee was certainly guilty of no negligence in allowing his horse to be upon the highway. He omitted no precaution to prevent the escape of the animal that ordinary prudence could have suggested.

Thus, it was said by the court in *Dennis* v. *Louisville, etc., R. W. Co.*, 116 Ind. 42, "A man who places a horse in an enclosure securely fenced, is not to be charged with contributory negligence because the horse leaps the fence and escapes, unless it appears that the horse was one that ordinary fences would not confine." See, also, *Chicago, etc., R. R. Co.* v. *Nash*, 1 Ind. App. 298 ; *Toledo, etc., R. R. Co.* v. *Johnston*, 74 Ill. 83.

It is conclusive evidence of negligence upon the part of a railroad company to omit the statutory signals at highway crossings, and such omission gives rise to a right of action in any one who has been injured thereby. *Pennsylvania Co.* v. *Hensil*, 70 Ind. 569 ; *Chicago, etc., R. R. Co.* v. *Boggs*,

101 Ind. 522; *Cincinnati, etc., R. R. Co.* v. *Butler*, 103 Ind. 31; *Baltimore, etc., R. R. Co.* v. *Walborn*, 127 Ind. 142; *Lake Shore, etc., R. W. Co.* v. *Van Auken*, 1 Ind. App. 492.

Such negligence, however, is actionable only in favor of those for whose benefit and protection the statute was enacted. More accurately speaking, negligence consists in the omission of a duty, and where there is no duty there can be no negligence, so the omission of the statutory signals is a *negligent* omission only in favor of those to whom the railroad company owes the duty of giving them. Upon this doctrine it is argued with much force and plausibility that the duty thus imposed runs only in favor of persons and property rightfully upon the highway, and as the appellee's animal was there unattended and without right the company was guilty of no negligence.

It may be conceded that when animals are trespassing upon a railroad track at a point where it is in the exclusive possession and control of the company and securely fenced the doctrine thus contended for would obtain.

The question whether a railroad company owes any duty to an animal which is upon a highway crossing, unattended and without strict right, yet through no fault of its owner, seems to have been regarded by the Supreme Court of this State as still an unsettled question in the latest case upon the subject. *Louisville, etc., R. W. Co.* v. *Green*, 120 Ind. 367.

In the recent case of *Chicago, etc., R. R. Co.* v. *Nash, supra,* the question was exhaustively considered by this court and the conclusion was reached that railroad companies are bound to exercise ordinary care to prevent injury to an animal upon a highway crossing without the owner's fault, and we adhere to the doctrine of that case and regard it as sound in principle and conducive to the public welfare.

Under the statutes imposing a liability upon railroad corporations for injuries to animals where the road is not securely fenced, neither contributory negligence upon the part of the owner nor the fact that the animal was a trespasser

NOVEMBER TERM, 1891. 255

The Chicago, St. Louis and Pittsburgh Railroad Company *v.* Fenn.

will constitute a defence. Such statutory liability is in the nature of a police penalty, and was designed to promote the public safety. Thus it was said by the court in *New Albany, etc., R. R. Co.* v. *Maiden,* 12 Ind. 10 : "The law does not prescribe the payment, by the road to the owner, of the value of the animal, because of his abstract right to that sum where he is thus a wrong-doer, but because it is supposed to be as effectual a mode as any that can as yet be devised to compel the exercise, by the road, of all reasonable care to insure the safety of passengers," etc.

The doctrine of that case has been followed by the courts in this State without question from that day to this. *Pennsylvania Co.* v. *Mitchell,* 124 Ind. 473 ; *Banister* v. *Pennsylvania Co.,* 98 Ind. 220 ; *Cincinnati, etc., R. R. Co.* v. *Ridge,* 54 Ind. 39.

The statute requiring crossing signals belongs to the police powers of the commonwealth, and is of the same general character as the one just noticed. *Pittsburgh, etc., R. W. Co.* v. *Brown,* 67 Ind. 45.

Strong reasons exist for applying the same rule to both statutes, but it is now too firmly settled to be overturned that contributory negligence will defeat an action under the signal statute, regardless of questions of public policy.

But we are firmly of the opinion that the statutory duty to give signals at highway crossings runs in favor of all those who are rightfully upon the highway, and all whose property is there through no fault of the owner, though not by strict right. It is a generally recognized fact that under careful management domestic animals are liable to escape from their keeping and wander unattended upon public highways. Under such circumstances an animal would not be "running at large" within the ordinary meaning of the term, and would not be subject to impoundage. *Wolf* v. *Nicholson,* 1 Ind. App. 222 ; *McBride* v. *Hicklin,* 124 Ind. 499 ; *Jones* v. *Clouser,* 114 Ind. 387.

If the owner of an animal should entrust it to the care of

a competent person, to be driven upon a public highway in the vicinity of a railroad crossing, and the animal should be injured at the crossing on account of the failure of the company to give the statutory signals, there could be no question about the liability of the latter; but suppose, for illustration, that when near the crossing the driver should become suddenly stricken with death, and thus leave the animal unattended, would such calamity immediately relieve the railroad company of any duty towards the animal? Or suppose a team of horses driven by one upon a highway should become frightened and uncontrollable, and escape from the driver, would a railroad company be absolved from all duty to such horses on account of the accident? We think not, and yet the relations in their legal aspect would be the same as they are in the case before us.

The requirements of the statute under consideration were unquestionably designed to promote safety of travel both upon the railway and the highway. At common law the operatives of railway trains owe the duty to passengers and property in their care to maintain a vigilant lookout at highway crossings to avoid collisions. The statute prescribes these particular precautions and enjoins their observance under a liability to answer in damages to *all* who may be injured on account of their non-performance. Keeping in view the general scope and purpose of the regulation, the liability of animals to be at crossings unattended, without the fault of the owner, the serious consequences which might result from a collision, we have no difficulty in reaching the conclusion that the Legislature intended to give a right of action for injuries to animals upon highway crossings, without contributory negligence upon the part of the owner, resulting from a failure to give the statutory signals.

This rule will be productive of good results in its tendency to inspire with care both the owner of the animal and the railroad company, and thereby enhance the safety of travel.

The Chicago, St. Louis and Pittsburgh Railroad Company v. Fenn.

It is insisted further, that engineers will be unable to determine when an animal is at large through the fault of the owner and when not. It is no part of their duty to determine this question, but they should comply, with the law at all times and under all circumstances. The requirement is not onerous, and the law admits of no speculation upon the results of its disobedience. It was very aptly said in *Hill* v. *Louisville, etc., R. R. Co.,* 9 Heisk. 823, " The statute does not brook the slightest speculation upon things that are probable or possible, * * * but demands an absolute obedience to its provisions, whether they seem necessary or not."

Before there can be a recovery in this class of cases, however, it must be established that the omission of the signals caused the injury sued for.

This is a question of fact to be determined by the jury. It can not be declared as a matter of law that the failure of the company to comply with the law resulted in the injury, or that if the signals had been given the animal would have escaped. *Baltimore, etc., R. R. Co.* v. *Walborn, supra; Cincinnati, etc., R. W. Co.* v. *Gaines,* 104 Ind. 526 ; *Cincinnati, etc., R. W. Co.* v. *Hiltzhauer,* 99 Ind. 486 ; *Pittsburgh, etc., R. W. Co.* v. *Martin,* 82 Ind. 476; *Peoria, etc., R. R. Co.* v. *Stiltman,* 88 Ill. 529 ; Shearman & Redf. Neg., section 427.

Whether the collision would probably have been avoided by giving the signals is clearly an inference of fact, and not of law, and involves to some extent a knowledge of the habits and disposition of animals, and the probable effect of the warnings upon their movement.

There can be no accurate calculation of results upon irrational beings, but the law does not require exactness, and under such circumstances it is the duty of the jury to exercise their most intelligent judgment upon the probabilities and report accordingly.

There is no finding in the verdict that the death of the horse was the result of the appellant's negligent omission of

the crossing signals, nor that the horse would not have been injured had such signals been given.

The judgment must therefore be reversed.

The judgment is reversed, with instructions to award a *venire de novo*.

REINHARD, J., while agreeing with the conclusion reached, dissents as to some of the statements of law enunciated in the opinion.

Filed Jan. 5, 1892.