No. 705.

THE LOUISVILLE, NEW ALBANY AND CHICAGO RAILWAY
COMPANY v. DAVIS.

MUNICIPAL CORPORATION. — *Ordinance.* — *Construction of.* — *Animals Standing Loose in Street.*—Where a city ordinance declares "that it shall be a nuisance and unlawful to suffer any animal, whether attached to a vehicle or not, to stand in any public way without being hitched," the manifest purpose of such ordinance was to prevent persons from leaving horses in a public way unattended by the driver or person in charge without being hitched, and was not intended to apply when the animal was in the presence and under the control of the person in charge.

CONTRIBUTORY NEGLIGENCE.—*Railroad.*—*Allowing Horse to Stand Near by.*—*Damages.*—The owner or driver of a horse may rightfully allow the horse to stop and stand temporarily in a public street, for a proper purpose, in close proximity to a railroad, if in so doing he does not interfere with the rights of the public or violate some law or ordinance, and in so doing he will not be guilty of contributory negligence in case the horse takes fright and does injury by reason of the negligent act of another.

RAILROAD.—*City Ordinance.*—*Failure to Ring Bell in Compliance with.* —*Conclusive Negligence.*—It is conclusive negligence on the part of a railroad company to fail to comply with a city ordinance requiring the ringing of the bell at certain places.

NEGLIGENCE.— *Wrongful Acts Combined with Rightful Act.*—*Liability for Such Combined Cause of Injury.*—Where two acts of negligence, combined with one lawful act, are shown to be proximate causes of an injury sustained by one who is without fault on his part, the person or corporation which is guilty of such actionable negligence is responsible for the damages resulting from such combined wrong-

ful and rightful acts, when the result of the wrongful acts, independent of the rightful act, can not be separated and determined.

From the Floyd Circuit Court.

*E. C. Field* and *W. S. Kinnan*, for appellant.

*C. L. Jewett* and *H. E. Jewett*, for appellee.

DAVIS, J.—Omitting the caption and signature of counsel, the complaint in this case was as follows:

"Thomas H. Davis complains of the Louisville, New Albany and Chicago Railway Company, defendant, and for cause of action plaintiff says: At the time of the grievances hereinafter set forth, the defendant was a railway corporation engaged in operating a line of steam railroad from Main and Vincennes streets, in the city of New Albany, to Chicago, Illinois; that the track of said defendant's railway, in passing through the city of New Albany, was laid over and along and upon a certain public street and highway of said city known as Fifteenth street, and said track, in passing along said Fifteenth street, intersected and crossed a certain other public street and highway of said city, much traveled and used for the passage of horses and vehicles, called Spring street.

"At the time of said grievances, an ordinance of the said city of New Albany prohibited the running of any train of cars within the limits of said city at a higher rate of speed than five miles per hour. On the 20th day of April, 1891, the plaintiff was at a point on Spring street near its intersection with Fifteenth street, and about twenty feet from the said railway track of said defendant, with a horse, the property of the plaintiff, of the value of one hundred and thirty-five dollars, attached to a buggy, also the property of the plaintiff, of the value of one hundred and fifteen dollars, and while at said point, and in front of a drug store at the corner of said Fifteenth

and Spring streets, in the transaction of some business, a passenger train of the defendant, drawn by a locomotive of defendant, which locomotive was in charge of an engineer and fireman, servants of the defendant, was run at a high and unlawful rate of speed, to wit, the speed of ten miles per hour, along said Fifteenth street, and across said Spring street; that the bell on said locomotive was not rung, nor was any other signal or warning given to indicate the approach of said train to said Spring street, or that it was about to cross the same; that when said locomotive was at a point nearly opposite where said plaintiff's horse and buggy were standing, and while said horse had become frightened at the sudden approach of said locomotive and train, without any signal or warning, and the plaintiff was holding said horse, and said servants of the defendant in charge of said locomotive, negligently, mischievously and willfully caused a large amount of steam to be let out of said locomotive and expelled therefrom, causing a loud and unusual noise, and one which was calculated to and did frighten the plaintiff's horse so that said horse became unmanageable and broke away from this plaintiff, totally destroying the buggy aforesaid and breaking said horse's leg and injuring said horse so that its value was entirely destroyed, and plaintiff was forced to kill it.

"The plaintiff says that said injury was caused without any fault or negligence on the part of the plaintiff, but solely because of the negligence and misconduct of the defendant and its servants, as hereinbefore set forth, to plaintiff's damage in the sum of two hundred and fifty dollars.

"Wherefore the plaintiff sues and demands judgment against the defendant for the sum of two hundred and fifty dollars."

The case was tried by a jury, and the following special verdict returned:

"*First.* We find that on the 20th day of April, 1891, the defendant was a railway corporation engaged in operating a line of steam railroad from Main and Vincennes streets, in the city of New Albany, to Chicago, Illinois.

"*Second.* That the track of said railroad passes through the city of New Albany, and was laid down and upon and operated over Fifteenth street, a public street of New Albany, and at the intersection of Fifteenth and Spring streets it intersected and crossed Spring street, in New Albany.

"*Third.* That said Spring street, where crossed by said railway, was, on the 20th day of April, 1891, a public and frequented street of New Albany, one of the principal streets of said city, and constantly used as a street by pedestrians and persons in vehicles.

"*Fourth.* That on the 20th day of April, 1891, an ordinance of the city of New Albany prohibited the running of railway trains within the corporate limits of said city, at a greater speed than five miles per hour.

"*Fifth.* That the ordinance granting the defendant company the right to lay down its track upon Fifteenth street, and through the city of New Albany, required that a bell should be rung upon every locomotive while passing through said city, and that no train or locomotive should be run at a greater speed than five miles per hour.

"*Sixth.* That on the 20th day of April, 1891, the plaintiff, Thomas H. Davis, was the owner of a horse of the value of one hundred and thirty-five dollars, and also a buggy of the value of one hundred and fifteen dollars, and that said horse was a horse of ordinary gentleness, safe to drive along the streets of said city, and to leave standing in the street of said city when the said Thomas

H. Davis was in sight and convenient reach of said horse, and not more than three or four steps away from him.

"*Seventh.* That on the 20th day of April, 1891, the plaintiff, with said horse hitched to said buggy, drove down Spring street and stopped in front of a drug store at the corner of Fifteenth and Spring streets and about thirty feet from the track of defendant's railway; that the plaintiff stopped said horse and left him standing hitched to said buggy, but not otherwise secured or hitched, in the gutter next to the curb and sidewalk, and immediately in front of the door of said drug store; that at the place where said horse was left standing, he had been frequently left standing before, and might have been safely left standing on said 20th day of April, 1891, if the defendant company had given notice of the approach of its train by ringing the bell upon said locomotive.

"*Eighth.* That while the plaintiff was standing at the door of said drug store, and had taken out his pocketbook for the purpose of paying a bill, the said horse became alarmed and frightened at the approach of a passenger train of the defendant company, running along its said track on Fifteenth street and about to cross Spring street.

"*Ninth.* That said train was on said day run along said Fifteenth street and across Spring street at a greater rate of speed than five miles per hour, and that no bell was rung upon the locomotive of said train, while approaching or crossing said Spring street; that, as said engine crossed over Spring street, the persons upon said locomotive suffered the steam to escape therefrom, from the lower part of said locomotive, with a hissing noise, which steam and noise were calculated to, and did, frighten plaintiff's horse and render him unmanageable.

"*Tenth*. That as soon as plaintiff's horse manifested alarm at the near approach of said train, the plaintiff went to said horse and took hold of him, before he had moved from the place where he was first left standing, and that the plaintiff attempted to hold said horse, and did hold to him until he had dragged the plaintiff about two squares, when said horse escaped from plaintiff, and ran into a telegraph pole and injured plaintiff's buggy to the amount of thirty-five dollars, and that said horse continued his flight and ran away, and ran into a shade tree on Spring street and so injured himself that he was rendered worthless and had to be killed.

"*Eleventh.* That on the said 20th day of April, 1891, the ordinance set out in the second paragraph of the defendant's answer was in force in the city of New Albany, and that the plaintiff, Thomas H. Davis, knew of the location of said railway, and the fact that the trains and locomotives frequently passed over said track, and that the train to Chicago left the city of New Albany about 8 o'clock in the morning.

"*Twelfth.* That said Thomas H. Davis had frequently stopped his said horse in front of said store, at the place where he stopped it on the 20th day of April, 1891, without injury or fright to said horse from the trains of said railway, and that while said horse was standing in said gutter on the 20th day of April, 1891, he was under the control of said Davis, and in such position that he could be easily reached and taken hold of by said Davis, and that the act of said Davis in leaving said horse so standing while he went to the door of the drug store was that of a reasonable and prudent man.

"*Thirteenth.* That if the servants of the defendant in charge of said locomotive had rung the bell while approaching and crossing Spring street, and had not run said train at a greater speed than five miles per hour,

and had not, when crossing Spring street, suffered and permitted the steam to escape from the lower part of the locomotive, the injury to plaintiff's horse and buggy would not have occurred. But that said injury to said horse and buggy were the result of the failure to ring the bell and the act of the defendant in running said train at a greater speed than five miles per hour, and in permitting the steam to escape from the lower part of the locomotive, thereby frightening said horse and causing it to run away and injure itself and the buggy in the manner herein stated; that the engineer in charge of said locomotive had control of the escape of steam from the lower part of said locomotive, and that the same could not have escaped without the act of said engineer or of the fireman with the consent of the engineer.

"*Fourteenth.* That the plaintiff, immediately upon learning of the approach of said train, took hold of his said horse, and the fact that the horse was left standing in the street did not in any way contribute to the running away of, or injury to, said horse and buggy, and the plaintiff used every precaution and means which a prudent and reasonable man would use to prevent said horse from running away; that plaintiff's horse and buggy were injured as herein stated, without any fault on the part of the plaintiff, Thomas H. Davis."

Then followed the proper conclusions in regular form.

Judgment was rendered in favor of plaintiff for one hundred and seventy dollars.

Several errors are assigned, but all are waived by failure to discuss them, except the third, which is as follows:

"The court erred in overruling appellant's motion for judgment in its favor on the special verdict of the jury."

In this connection, we desire to say there is no suggestion in the brief of the counsel for appellant as to the theory upon which the complaint proceeds. The com-

plaint is not attacked because it proceeds upon the idea that it may be good either for a willful injury or as a complaint for an injury occasioned by negligence. No claim is made that the *gravamen* of the action, as alleged in the complaint, is willful negligence. It has not been intimated, in argument, that the facts found in the special verdict are substantially different from the allegations of the complaint.

We do not, therefore, feel it incumbent on us to enter upon the consideration of these questions.

The court, however, is of the opinion that the gist of the complaint is negligence, and that the averments therein in regard to willfulness may be regarded as surplusage. *Louisville, etc., R. W. Co.* v. *Bryan*, 107 Ind. 51.

Counsel for appellant have urged, as we view the case, the only questions arising on the record.

Counsel for appellant state their position as follows:

"The contention of appellant is—

"*First.* That the verdict shows that appellee was guilty of negligence, in that he left the horse standing in a public street, in close proximity to a railroad track, where he was bound to know trains might pass at any moment.

"*Second.* That he was himself violating a public ordinance in thus permitting his horse to stand in a public street, without being hitched.".

On these two propositions the argument of counsel is based—that appellee was guilty of contributory negligence.

The city ordinance which is referred to was set out in the second paragraph of the answer in the following language:

"That it shall be a nuisance and unlawful to suffer

any animal, whether attached to a vehicle or not, to stand on any public way without being hitched.''

The finding as to the conduct of appellee in regard to the horse does not render him guilty of contributory negligence.

So far as the ordinance is concerned, its manifest purpose was to prevent persons from leaving horses in a public way unattended by the driver or person in charge, without being hitched to a post or some fixed object.

It was evidently not intended to apply to a horse when in the presence and under the control of the owner or driver; otherwise, every time a stop was made the horse would have to be hitched, notwithstanding the driver may have had hold of the reins or bridle, and this would be unreasonable and absurd.

In this case, if appellee had left the horse standing unhitched and unsecured in the street, and such fact had contributed to the fright or running away of the horse, there could, of course, be no recovery by appellee for the damages sustained, no matter how negligent appellant may have been, but it appears from the finding that appellee was at the head of the horse and had hold of the bridle before the horse had moved, and that the fact that the horse was not hitched to a post or other fixed object, did not in any manner contribute to the injury.

Chief Judge BLACK, in speaking for the court in a recent case, said: ''The right of appellee to recover could not be affected by his having contributed to the injury by his act, unless he was in fault in so` doing.'' *Noblesville Gas and Improvement Co.* v. *Teter*, 1 Ind. App. 322 (326); *Hinkle* v. *Richmond, etc., R. Co.*, 13 S. E. Rep. 884, and authorities there cited.

The public have the right to drive horses on and along the streets. The railroad companies also have the right

to run their trains on and across the streets. The owner or driver of a horse may allow his horse to stop or stand temporarily and for a proper purpose, in the street, in proximity to the railroad, if he does not interfere with the rights of the public or violate some law or ordinance. If the owner or driver is without fault, and the company is not guilty of actionable negligence, and the horse frightens at the engine or train and runs away, there is no remedy. The act of allowing the horse to stop and stand in the street, in the presence and under the control of the owner, near the railroad track, was not contributory negligence under the facts and circumstances set out in the verdict.

If notice of the approach of the train had been given by the ringing of the bell, as required by the ordinance, and appellee had suffered his horse to stand in close proximity to the railroad until the train reached Spring street, a different question as to contributory negligence would be presented, but, under the facts and circumstances set out in the special verdict, we are of the opinion that appellee was not in fault.

The appellee, notwithstanding his knowledge of the proximity of the railroad, and that the morning train would soon be due, had the right to assume that appellant would give notice of the fact that the train was approaching, by ringing the bell. *Noblesville Gas and Improvement Co.* v. *Teter, supra.*

After discussing the question of contributory negligence, counsel for appellant say:

"In the second place, if it is determined that the verdict is a finding of facts which show appellee to be without fault, then appellant's insistence is that the verdict must show that there was negligence on its part which was the proximate cause of the damage."

The remaining question for our consideration is, there-

fore, whether under the facts stated in the verdict the appellant was guilty of negligence, which was the proximate cause of the damages sustained by appellee in the injuries to his property.

The failure of appellant to comply with the ordinance requiring the ringing of the bell on the occasion in question constitutes conclusive negligence on the part of appellant. *Chicago, etc., R. R. Co.* v. *Fenn*, 3 Ind. App. 250; *Pennsylvania Co.* v. *Hensil*, 70 Ind. 569; *Baltimore, etc., R. R. Co.* v. *Walborn, Admr.*, 127 Ind. 142; *Cincinnati, etc., R. R. Co.* v. *Butler*, 103 Ind. 31.

In *Chicago, etc., R. R. Co.* v. *Fenn, supra*, Judge CRUMPACKER, in speaking for the court, says: ''It is conclusive evidence of negligence upon the part of a railroad company to omit the statutory signals at highway crossings, and such omission gives rise to a right of action in any one who has been injured thereby.''

Was the negligence of appellant the proximate cause of the injuries for which damages are sought in this action?

Many cases are cited by counsel for appellants in support of the propositions, that railroad companies are not liable for frightening animals by the legitimate operation of their locomotives or trains, and that there must be a concurrence of injury and wrong to support such action, and that such corporations have the right to make all reasonable and usual noises incident to such operation, whether occasioned by escape of steam or other causes, etc. *Whitney* v. *Maine Central R. R. Co.*, 69 Me. 208; Rorer on Railroads, p. 704; *Ryan* v. *Pennsylvania R. Co.*, 132 Pa. St. 304; *Baltimore, etc., R. W. Co.* v. *Thomas*, 60 Ind. 107; *Pittsburgh, etc., R. W. Co.* v. *Taylor*, 109 Pa. St. 306; *Macomber* v. *Nichols*, 34 Mich. 212; *Ohio, etc., R. W. Co.* v. *Trowbridge*, 126 Ind. 391; *Bailey* v. *Hartford, etc., R. Co.*, 37 Am. and Eng.

R. R. Cases, 483; *Burton* v. *Philadelphia, etc., R. R. Co.,* 4 Harring. (Del.) 252.

The decisions cited, it may be conceded, state the law correctly, applicable to the facts in the respective cases, but the question is whether the principles enunciated in those cases are applicable to the facts set out in the special verdict of the jury in this case.

It appears that the engineer suffered steam to escape from the lower part of the locomotive as the engine crossed over Spring street, but it is not shown whether this was necessary or not. If it was necessary it was lawful; and in the absence of a finding to the contrary, the presumption is that it was necessary.

It is clear from the verdict that three causes contributed to the injuries:

1.  The failure to ring the bell.
2.  The rate of speed in excess of five miles per hour.
3.  The escape of the steam.

The ringing of the bell as required by the ordinance was intended for the manifest purpose of notifying persons of the approach of a locomotive or train.

If the bell on this train had been rung, appellee would have had such notice of its approach as would have made it incumbent on him to take or drive his horse away, and the slower the train was running the better would his opportunity have been to have reached a place of safety.

The proximate cause of the injuries was the rate of speed and the failure to ring the bell, in connection with the escape of the steam.

Now, does the fact that two of these causes constitute actionable negligence and that the other was a rightful act absolve the appellant from liability?

Where two acts of negligence, combined with one lawful act, are shown to be the proximate causes of an in-

jury sustained by one who is without fault on his part, when the result of the wrongful acts independent of the rightful act can not be separated and determined, the person or corporation which is guilty of such actionable negligence is responsible for the damages resulting from such combined wrongful and rightful acts.

The jury find that the horse became alarmed and frightened at the approach of the train, and that the escaping steam and noise rendered the horse unmanageable. The jury expressly find in the fourteenth paragraph of the verdict that if the servants of appellant in charge of the locomotive had rung the bell while approaching and crossing Spring street, and had not run said train at a greater rate of speed than five miles an hour, and had not suffered and permitted the steam to escape from the lower part of the locomotive, the injury to appellee's horse and buggy would not have occurred, and the jury specially state that said acts were the cause of the fright of the horse.

It is not necessary that we should recapitulate all of the material facts set out in the verdict of the jury. It will suffice to say that when the entire finding is considered and construed together it does not appear that the accident would have happened had the appellant not been guilty of the negligent acts under consideration, and the said negligent acts, as found by the jury, having constituted two of the three concurring and combined proximate causes of the injury, the appellant is liable. 16 Am. and Eng. Encyc. of Law, p. 440, and authorities cited on page 441.

In our opinion, the judgment of the court below, on the verdict of the jury, was correct.

Judgment affirmed.

Filed Feb. 28, 1893; petition for a rehearing overruled June 21, 1893.

The Louisville, New Albany and Chicago Railway Company *v.* Davis.

## Concurring Opinion.

Ross, J.—Inasmuch as I can not concur in all the reasoning contained in the opinion of the majority of the court, I am compelled to present the basis of my views of the record under consideration.

Before proceeding to the consideration of the · sufficiency of the facts found to support the judgment, it is necessary to ascertain the issues upon which the cause was tried.

The *gravamen* of the action, as alleged in the complaint, is that the servants of the appellant, while operating one of its locomotive engines, "negligently, mischievously, and willfully caused a large amount of steam to be let out of said locomotive, and expelled therefrom, causing a loud and unusual noise, and one which was calculated to and did frighten the plaintiff's said horse, so that said horse became unmanageable and broke away from this plaintiff, totally destroying the buggy aforesaid, and breaking said horse's leg and injuring said horse so that its value was entirely destroyed."

The theory of the complaint is that by reason of the negligent, mischievous, and willful acts of appellant's servants, in causing "a large amount of steam to be let out of said locomotive, and expelled therefrom, causing a loud and unusual noise, and one which was calculated to, and did, frighten the plaintiff's said horse, so that said horse became unmanageable," etc., the injuries complained of occurred.

A pleading must proceed upon some definite theory, and upon that theory it must be considered in determining the issue formed thereon.    *Western Union Tel. Co.* v. *Reed*, 96 Ind. 195.

A complaint which undertakes to state a cause of action arising out of a willful injury, and at the same time

to charge for an injury occasioned by mere negligence, is double, and can be considered only as presenting one issue. The object of this rule being to enforce a single issue and to avoid ambiguity.

In the case of *Western Union Tel. Co.* v. *Reed, supra,* ELLIOTT, C. J., speaking for the court, says: "It is no great hardship to require obedience to rules of pleading and logic, and not to do so will result in the evil of leaving disputants without a direct issue, and the courts without the means of determining the competency or relevancy of evidence. In order to bring the parties to an issue, it is necessary to require them to make their pleadings conform to some definite theory, and to be sufficient upon that theory;" and, further on in the opinion, it is said: "A complaint for the recovery of a penalty must be good for that purpose, and not for some other, since to rule otherwise would put it in a plaintiff's power to make an elastic pleading, changeable to meet the exigencies of his case."

As the court said, in *Gregory, Admr.,* v. *Cleveland, etc., R. R. Co.,* 112 Ind. 385, "There is a clear distinction between cases which count upon negligence as a ground of action and those which are founded upon acts of aggressive wrong or willfulness, and a pleading should not be tolerated which proceeds upon the idea that it may be good either for a willful injury or as a complaint for an injury occasioned by negligence."

The specific act of willfulness charged in the complaint in this case is that appellant's servants "negligently, mischievously and willfully caused a large amount of steam to be let out of said locomotive and expelled therefrom." This allegation can admit of no other interpretation than a charge of willfulness, and with this view of the issues we proceed to the consideration of the facts found in the verdict.

Those parts of the verdict containing the facts found in support of the issues are as follows: "That as said engine crossed over Spring street, the persons upon said locomotive suffered the steam to escape therefrom, from the lower part of said locomotive, with hissing noise, which steam and noise were calculated to and did frighten plaintiff's horse, and render him unmanageable; that if the servants of the defendant in charge of said locomotive had not, when crossing Spring street, suffered and permitted the steam to escape from the lower part of the locomotive, the injury to plaintiff's horse and buggy would not have occurred."

There is no finding that appellant's servants willfully permitted steam to escape, neither is it found that it was not necessary in the operation of the locomotive for steam to escape, nor do the jury find that the servants of the appellant unnecessarily permitted the steam to escape. If it was necessary, in the operation of appellant's locomotive engine, for steam to escape—it was lawful. And it must be presumed that it was necessary, because the jury failed to find the escape of steam, at the time complained of, to have been unnecessary. Had the jury found such escape of steam to have been unnecessary, in order that the appellee might recover for a willful injury, it was necessary, either that facts be found from which the court might infer that such escape of steam had been purposely and intentionally permitted with design to produce injury, or such facts as would have shown that it was permitted under such circumstances—either known, or which should have been known, to the servants permitting the act—as that its natural and probable consequences would be to produce injury to others.

In the case of *Belt R. R. & Stock Yard Co.* v. *Mann,* 107 Ind. 89, MITCHELL, Judge, speaking for the court, said: "There must have been either an actual or con-

structive intent to commit the injury. The act must have involved conduct, *quasi* criminal in character.''

And the same judge in *Louisville, etc., R. W. Co.* v. *Bryan*, 107 Ind. 51, said: ''To constitute a willful injury, the act which produced it must have been intentional, or must have been done under such circumstances as evinced a reckless disregard for the safety of others, and a willingness to inflict the injury complained of.''

In the case of *Chicago, etc., R. R. Co.* v. *Nash*, 1 Ind. App. 298, this court, in construing the allegations of a complaint, says: ''To say that an act has been done willfully and willingly, is to indicate that it has been done intentionally, and implies that the person doing it knew what he was doing, and acted from choice as a free agent. Such an allegation is inconsistent with the idea of accident, mistake, inadvertence, negligence. It implies that the will was a party to the act, and that the act was done, not because of doubt or uncertainty as to the right or proper course to pursue, but without adequate reasonable cause.''

It is settled beyond all controversy that when a special verdict is silent as to any fact it is equivalent to a finding, as to that fact, against the party having the burden of establishing such fact. *Gray* v. *Taylor*, 2 Ind. App. 155; *Wainright* v. *Burroughs*, 1 Ind. App. 393; *Parke County Coal Co.* v. *Terre Haute Paper Co.*, 129 Ind. 73; *Nicodemus* v. *Simons*, 121 Ind. 564; *Quill* v. *Gallivan*, 108 Ind. 235.

And it is equally well settled that the plaintiff must recover *secundum allegata et probata*, or not at all. If the facts found in the special verdict are substantially different from the allegations of the complaint, the plaintiff can not recover, and judgment should go on the verdict in favor of the defendant. *Brown* v. *Will*, 103 Ind. 71; *Thomas* v. *Dale*, 86 Ind. 435.

Facts found in a special verdict which are not within the issues, as formed by the theory of the pleadings, are mere surplusage, and should be disregarded by the court in the determination of the rights of the parties and the rendition of judgment. *Kitts* v. *Willson,* 130 Ind. 492; *Pittsburgh, etc., R. W. Co.* v. *Adams,* 105 Ind. 151; *Indianapolis, etc., R. W. Co.* v. *Bush,* 101 Ind. 582; *Hasselman* v. *Carroll,* 102 Ind. 153.

A special verdict should be limited to the case made by the pleadings, and should contain only such facts, within the issues, as have been proven, and should not embody conclusions of law or of fact. *Chicago, etc., R. W. Co.* v. *Burger,* 124 Ind. 275.

It is not insisted by the appellant, on this appeal, that the facts found tend to make a case different from that alleged in the complaint, but admitting to be true and properly found every fact found in the special verdict, counsel insists that such facts did not warrant the court in rendering judgment thereon in favor of the appellee.

I fully concur in the opinion of the majority of the court that the facts found are sufficient to sustain the judgment, and for that reason the judgment should be affirmed.

Filed Feb. 28, 1893.