## PALMER STEEL & IRON COMPANY v. THE HEAT, LIGHT & POWER COMPANY.

[No. 20,031. Filed March 12, 1903.]

EQUITY.—*Reformation of Contract.*—Where in an action on a contract for gas delivered, the plaintiff sought equitable relief by invoking the aid of the court in correcting and perfecting the written evidence of the contract, the whole case became one of equitable cognizance and it was proper for the court to award whatever relief the plaintiff proved himself entitled to. *pp. 237, 238.*

CONTRACT.—*Finding.—Judgment.*—In an action to recover for gas furnished, the contract provided that defendant should pay $30 per day until meters were installed, and thereafter seven cents per thousand feet. It also provided that if the reading of the meters showed the value of the gas to be more than $30 per day the defendant should pay the difference, and if less than $30 per day, the plaintiff should credit defendant for the excessive payment. The complaint alleged that it was the intention and agreement of the parties that plaintiff was only to supply gas to three

puddling furnaces, but by mistake of the scrivener such provision was omitted and defendant took gas for three additional furnaces by secretly opening a stopcock and thereby supplied six furnaces instead of three, and claimed for gas used in the three other furnaces an additional sum of $20 per day, and as no meters were used plaintiff was unable to state the number of feet of gas consumed. The court found that defendant used 19,737,000 cubic feet of gas worth seven cents per thousand feet and rendered judgment accordingly, without any finding that defendant used any gas not embraced within this contract. *Held,* that the finding by the court of the quantity of gas used, and its value, was not within the issues, and the judgment was erroneous and excessive. *pp. 238-240.*

From Delaware Circuit Court; *J. G. Leffler,* Judge.

Action by the Heat, Light & Power Company against the Palmer Steel & Iron Company. From a judgment for plaintiff, defendant appeals. Transferred from Appellate Court, under §1337u Burns 1901. *Reversed.*

*Rollin Warner* and *A. W. Brady,* for appellant.
*Templer, Ball & Templer,* for appellee.

HADLEY, C. J.—Suit by appellee to recover on account for natural gas sold and delivered to appellant on a written contract. The written contract relied upon is in these words: "Agreement made and concluded August 7, 1899, by and between the Heat, Light & Power Company of first part, and the Palmer Steel & Iron Company of second part, all of Muncie, Indiana, witnesseth: That for and in consideration of the payments and rentals to be paid by the second part, as hereinafter mentioned, and in the time and manner hereinafter stated, the first part agrees to allow second part to make connections to first part's high-pressure city lines at the corner of Willard and ——— streets, and use gas therefrom for heating, lighting, and manufacturing purposes in the second part's iron mill located at ——— street in the southeastern part of the city, at the rate of seven cents per thousand feet discharge from first part's line where said connections are made, viz., at Willard and ——— streets; the gas to be used by meter

measurements, both parties being allowed to read the meter, and the second party also to pay a rental per month based as follows: $2 per month to be paid to first part for the use of meter or meters, viz., at the rate of $2 per month for each $50 invested in said meter or meters, the second part, however, having the privilege to purchase meters and use the same, and thus avoid payment of the rental above mentioned; but the first part shall at all times have the privilege of testing such meters as may be furnished by second part, and receive pay therefor at the said above rate per thousand feet for the corrected measurement as made by first part. And it is further agreed by the parties that until such time as the said meters are procured and set for the measurement of said gas the said second party shall pay semimonthly for the gas used, $30 per day, payable on the 15th of the month in which the gas is used, and for the last half of the month between the 1st and the 5th of the following month, with the further understanding that after the meters have been set, if the reading of the same show the value of gas to be more than the said $30 per day then the second part shall at once pay for the difference from the time the gas was first turned into the mill up to the date of setting said meters, and if, on the other hand, the payment of the said $30 per day by the reading of the meters would show the amount so paid to be in excess of that due the first part, then the first part shall allow second part a credit for said excessive payment. This arrangement to be in force and effect so long as the first part desires to furnish the gas, not to exceed November 1, 1899, but that no liability on the part of the first part in case of shortage of gas by leakage of lines or otherwise. And second party can terminate this agreement at any time by the payment of all rentals and gas used up to date, they giving notice and having gas turned off. In witness," etc. (Signed) "Heat, Light & Power Company, by H. C. Zeig-

ler, P.   Palmer Steel & Iron Company, by J. D. Briggs, V. P."

It is alleged in the complaint that it was the intention and agreement of the parties to the contract that the plaintiff the Heat, Light & Power Company was to, and did, obligate itself to supply gas to three puddling furnaces located on the north side of the defendant's mill, and no others, but by mutual mistake of the parties and the scrivener who wrote the contract, a provision that gas should be furnished only to said three north furnaces was, by mistake and inadvertence, wholly omitted from the contract as written, and the writing was accepted and signed by the parties as expressing the contract, believing that said provision was incorporated therein; that the plaintiff did attach the defendant's system of mill pipes with the plaintiff's high-pressure gas-main, so that gas could be supplied to said three north furnaces; that the defendant had three puddling furnaces located on the east side of its mill building, which were also connected with its system of gas-pipes about said mill, and when gas flowed into the mill pipes the only way to exclude it from said three east furnaces was by closing a stopcock set in one of the pipes, and which said stopcock, under said contract, was to be closed and kept closed during the continuance of the contract; that on the —— day of August, 1899, the plaintiff turned gas into the mill pipes, and the said stopcock was secretly opened, and the gas flowed to, and supplied, said three east furnaces as well as the three north furnaces, thereby supplying six of the defendant's furnaces, instead of three as provided by the contract, for forty-three days in August and September, 1899; that under the contract the plaintiff was to receive $30 for each and every day gas was furnished to said three north furnaces, and the gas so obtained by the defendant for use in said three east furnaces was reasonably worth $20 per day for each day so used (a bill of

particulars thereof is filed, marked A.), and that none of the gas so furnished the defendant, and used by it, was measured by meter, and no gas-meter was furnished or used in or about the measuring of said gas, and the plaintiff is wholly unable to state the number of feet of gas furnished the defendant as aforesaid; and that there is a balance due and unpaid on said account of $1,355. Prayer for reformation of the contract, and judgment for $1,500.

Exhibit A sets forth in detail the account sued on, and contains an item of $9.95 for making the connection between the defendant's mill pipes, and the plaintiff's gas-main, and forty-three per diem items, stated thus:

August 9. To gas for one day for three
   furnaces on north side of mill as per
   contract .................... $30.00
   To gas taken to east side of mill.... $20.00
                               $50.00

August 10. To gas for one day for
   three furnaces in north side of mill
   as per contract.................. $30.00
   To gas taken to east side of mill.... $20.00
                               $50.00

Etc., etc., making total of.................. $2,154.95
Credited by payments..................... $799.95

Leaving the balance due and unpaid.......... $1,355.00

The defendant answered by a general denial and payment. Trial by the court. Special finding, conclusions of law, and judgment in favor of the plaintiff for $591.59.

The sufficiency of the complaint, the action of the court in overruling appellant's motion for a new trial, in overruling its exceptions to the conclusions of law, and in overruling its motion in arrest of judgment, are properly assigned as error.

The substance of the special finding is as follows: The plaintiff is an Indiana, and defendant an Illinois, cor-

poration; the latter having an office and an iron mill in the city of Muncie, Indiana; in August, 1899, the plaintiff and defendant entered into and executed the written contract set out at the beginning of this opinion; the defendant made connection with the plaintiff's gas line referred to in said contract, and on the 7th day of August, 1899, began to take and use gas from such line for heating, lighting, and manufacturing purposes at its iron mill, and continued from the last preceding date until the 19th day of September, 1899, to use, at said mill, natural gas, intermittingly from said line for said purposes; during the period the defendant used gas for all or parts of thirty-two days, and during these thirty-two days gas was burned by the defendant about 532 hours, and the defendant used and consumed during the time aforesaid 19,737,000 cubic feet of gas, worth seven cents per thousand cubic feet—$1,381; the plaintiff performed labor for the defendant, in making connections with the defendant's gas-main, worth $9.95; the defendant before the commencement of this suit paid the plaintiff for gas furnished under said contract $799.95. From which facts the court states as its conclusions of law: (1) That the plaintiff ought to recover $591.59; (2) that the plaintiff is not entitled to a reformation of said contract; (3) that the court should render judgment for the above sum against the defendant.

The first assignment is not well taken. Appellant submits that the complaint, being a suit for specific equitable relief, is not sufficient to sustain a money judgment founded upon facts cognizable only by a court of law. We perceive no infirmity in the complaint. This is a suit to recover the price of property sold and delivered under a contract in writing. The ultimate relief sought is exclusively pecuniary, but it is made to appear that such relief can not be adequately administered without a reformation of the writing in such way as to make it speak the truth with respect to the contract that was actually made. The action

arises out of contract, and the equitable relief sought by invoking the court's aid in correcting and perfecting the written evidence of the contract is but an incident to the main action, and brings the case within the provisions of §281 Burns 1901, which authorizes a plaintiff in all such actions to "join such other matters in his complaint as may be necessary to a complete remedy." Under the averments of the complaint, the prior or contemporaneous reformation of the controlling contract was essential to a complete remedy, and, its consideration being exclusively of equitable cognizance, the effect was to draw the whole case into equity, which court became competent to award whatever relief the plaintiff proved himself entitled to, even though it proved to be but a money judgment. *Towns* v. *Smith,* 115 Ind. 480; *Field* v. *Brown,* 146 Ind. 293; *Bowen* v. *State, ex rel.,* 121 Ind. 235.

A more serious question arises upon the overruling of the motion for a new trial. Appellant insists that the complaint is drawn and that the trial proceeded on the theory that appellant was liable for gas at a per diem rate of $30 for the three north furnaces, and a *quantum valebat* for the east furnaces, and that, under the theory adopted, the special finding that 19,737,000 feet of gas, worth seven cents per 1,000, was furnished the defendant, was unauthorized and ineffectual, and that the assessment of the amount of damages was too large. The contract stipulates that payment for the gas shall be at the rate of $30 per day until a meter is furnished by one party or the other. The complaint alleges that no meter was at any time furnished by either party, and, therefore, under the contract, the plaintiff was to receive $30 for each and every day gas was furnished to said three north furnaces, and the gas so obtained by the defendant and used in said east furnaces was reasonably worth $20 per day. The bill of particulars accompanying the complaint sets forth the claim, exclusively, except one small item for making the connection, as com-

posed of forty-three items of $30 per day for the north, and $20 per day for the east furnaces. The three bills of account made out under the plaintiff's direction or authority, and forwarded to the defendant before suit was brought, stated the claim under the contract to be $30 per day. There is no pretense that a meter was furnished or used by either party, or that any attempt was made to measure the gas as it flowed to the defendant's mill, and for this reason, as alleged in the complaint, the plaintiff was wholly unable to state the amount of gas received by the defendant; nor is there a syllable of testimony in the record, that we have been able to find, that claimed or showed that the charge for supplying gas to the north furnaces, in the absence of meters, should be other than $30 per day. Appellee does not deny that the case proceeded upon the theory contended for by appellant, but affirms, in avoidance, that the case was also tried by both parties upon the theory that the contract for gas embraced only the three north furnaces; that appellant made no claim to a right to use the gas elsewhere than in the north furnaces, and that the real controversy was whether the appellant did, or did not, surreptitiously use it in its east furnaces, by opening the cut-off that, under the contract, was to be kept closed; and that the finding of the court of the quantity of gas furnished the appellant relates to the amount so wrongfully taken by appellant and used in the east furnaces.

Accepting appellee's contention does not free the case of embarrassment. It seeks by its complaint to recover $30 per day for all gas furnished under the contract to the north furnaces, and the reasonable value of gas wrongfully appropriated and used by appellee in other furnaces. The burden of both issues was upon appellee. It was not entitled to recover for gas wrongfully taken until it had established that some was so taken. The finding of the court is that the defendant used the plaintiff's gas for thirty-two

days, and during the time used 19,737,000 cubic feet, worth seven cents per 1,000 feet. There is no finding that the defendant used any gas wrongfully, or any gas not embraced within the terms of its contract, and the absence of a finding upon this point must be treated as a finding against the party whose duty it was to make the proof. *Meeker* v. *Shanks,* 112 Ind. 207, 212; *Archibald* v. *Long,* 144 Ind. 451, 454. From this it results that the appellee can not recover for the unauthorized use of gas by appellant in the east furnaces, because it has failed to establish that any was so used. It is conceded by both parties that appellee is entitled to $30 per day for supplying gas to the north furnaces; so the account, under the special finding, properly comes to this:

Thirty-two days supplying of gas to north furnaces
    at $30 per day ..........................$960.00
Credit by payments on account before suit....... 799.95

      Balance due plaintiff ..................$160.05

The finding by the court of the quantity of gas used under the contract, and its value, was not within the issues, and must be disregarded. *Kitts* v. *Willson,* 130 Ind. 492, 497; *Louisville, etc., R. Co.* v. *Davis,* 7 Ind. App. 222, 239; Woollen, Trial Proc., §4334; Elliott, Gen. Pr., §977.

Therefore the finding of the number of feet of gas furnished the defendant, and that it was of the aggregate value of $1,381.54, must be regarded as surplusage, because no such finding was called for by any issue in the case; and the further finding that the plaintiff was entitled to recover said amount, less the payments made thereon, $799.95— to wit $581.59—must be held to be excessive and erroneous.

It thus appearing that the finding and judgment, resulting from an erroneous view of the pleadings and issues, is excessive, the judgment is reversed, and cause remanded, with instructions to grant appellant a new trial.