Filed April 29, 1891.

---

No. 100.

## THE LOUISVILLE AND NASHVILLE RAILROAD COMPANY *v.* EVES.

APPELLATE COURT.—*Practice.*—*Reversal on Evidence.*—*When Will be.*—On appeal a judgment will not be reversed on the evidence if such evidence at all tends to sustain the verdict or finding on which it is based; but where the evidence is wholly insufficient, in any essential particular, to support the verdict or finding, the judgment will be reversed.

NEGLIGENCE.—*When Court Determines Questions of.*—When the facts are undisputed, it becomes the province of the court to determine whether or not they amount to negligence.

SAME.—*Diligence to Avoid Injury.*—*Contributory.*—The law requires at least the exercise of ordinary diligence to avoid an injury; and if such injury was occasioned by the negligence of the injured person, concurring with the negligence of the other person at fault, he can not recover. It must appear affirmatively from the plaintiff's evidence that he was free from contributory negligence

SAME.—*Degree of Diligence.*—*Knowledge of Danger.*—Greater precaution and diligence are required of an individual who has knowledge of the danger, and is familiar with all the surroundings, than of one who is ignorant of them.

SAME.—*Unhitched Horse Standing at Depot.*—Where the plaintiff left his horse unguarded and unhitched, and in close proximity to a railroad track, upon which he knew it was morally certain a train would approach to within a few feet of where his horse was standing, with another train standing on a track not more than fifty feet away, ready to pull out, and the thoroughfares in the immediate vicinity blockaded with horses and vehicles, as he knew, a recovery was denied, although the defendant was guilty of negligence in failing to ring the bell, in

failing to place a man on the rear end as it backed up at night, and in failing to place any head or other light at such rear end.

From the Vanderburgh Superior Court.

*S. B. Vance*, for appellant.

REINHARD, J. — This action, brought by the appellee against the appellant, was for negligently injuring the appellee's horse and wagon by the appellant's locomotive and train of cars. The issues were joined, the cause was tried by a jury, and a verdict was returned in favor of the appellee. Motions for a new trial and in arrest of judgment were made, and overruled, and the cause was appealed to the Supreme Court, and thence transferred here.

The assignment of error, among other questions, presents that of the correctness of the decision of the trial court in overruling the motion of the appellant for a new trial. One of the reasons assigned in that motion was the insufficiency of the evidence to sustain the verdict.

This court, like the Supreme Court, will not disturb a judgment when there is any evidence at all tending to sustain the verdict or finding upon which it is based; but when such evidence is wholly insufficient, in any essential particular, to support such verdict or finding, the judgment will be reversed.

One of the facts essential to the appellee's recovery in this case was his own freedom from negligence contributing to the injury.

It is insisted by the appellant that the evidence not only fails to establish that appellee did not contribute to the injury by his own negligence, but that it shows affirmatively that his animal and wagon were injured through his own fault and carelessness.

When the facts are undisputed, as they are in this case, it becomes the province of the court to determine whether or not they amount to negligence. *Western Union Tel. Co.* v.

*McDaniel*, 103 Ind. 294 ; *Pittsburgh, etc., R. R. Co.* v. *Spencer*, 98 Ind. 186 ; *City of Indianapolis* v. *Cook*, 99 Ind. 10 ; *Evansville, etc., R. R. Co.* v. *Duncan*, 28 Ind. 441.

All the evidence given in this case, except the testimony of one witness, was introdued by the appellee himself, and was on all material points without conflict. The appellee was a witness in his own behalf, and testified as follows :

" On the night of the 17th of April, 1888, was United States mail messenger, and have been three years in that service. My business was to carry the mails to and from the depot of defendant and the post-office at Evansville, which was done with a horse and wagon. There are streets on the east and west ends of the depot platform of defendant, and railroad tracks on its northern and southern sides. The street at the east end of the platform was occupied by hacks and omnibuses, and the space at the west end of the platform, between the railroad tracks, was the only space left∗ for a wagon to receive the mails. My stand was in that space near the southwest corner of the platform, and six to eight feet from the railroad track on the south side of the platform. The United States transfer clerk had directed me to occupy that place with my wagon and team. On the night of the 17th day of April, 1888, I had driven my horse and wagon to the defendant's depot at the time for the arrival of the southern and western trains, and put them in a position at the usual place. Train No. 54 from the south, and destined for St. Louis, came in about 1 : 15 A. M., and was standing on the track on the north side of the depot, headed for St. Louis. *I unhitched one trace and tied the lines to the single-tree, and leaving my horse and wagon, went over to train No. 54 to assist in getting the mails.* About the time we were through at that train I looked across and saw my horse and wagon crossing the track on the south side, and train No. 53 from St. Louis approaching very rapidly. I ran across the platform to endeavor to get my wagon off the track, and either fell on the track or was pushed by the wagon, which

had been struck by the train. To save myself, I rolled over and got between the inner rail and the platform. The wagon and horse were carried on toward the end of the track. The wagon was about demolished, and the horse showed that he had been rolled over, and the harness were injured materially. My knee was cut, and I was bruised in several places. The wagon was worth ninety or a hundred dollars before the accident, afterwards it was not worth more than fifteen dollars. I worked my horse the next day, but he got lame and was laid off for about a week. I then worked him for a few days, and he got lame again, and was laid off, and I could not use him any more. Until that night the train had been coming in with locomotive ahead and with its headlight up. On that night the train was pushing up to the station by a yard engine. There was no light on the platform, nor any brakeman or other person to signal for stopping train. The train, when I first saw the horse, was four or five car lengths away, and was running at the rate of about eight miles an hour. There were no air brakes on, and the bell rope was not attached. If they had been, and there had been a brakeman on the platform of the car to signal the danger, the train could have been stopped before reaching the wagon. The harness cost seventeen dollars, and was not worth more than one-half that much after the injury. There was no hitching post to which I could fasten my horse."

On cross-examination the appellee testified as follows :

" My horse and wagon were not left in charge of any one. Could not afford to hire a person to watch him, and if one had been holding him he might not have been able to keep him from getting on to the track. I do not know by what means I was hurt, whether by the wagon or cars, or by the rail as I rolled over. I know there was no light to be seen from the door of the express car, and do not think the air-brakes were connected. The train 54 was waiting for train 53 to come in, and had steam up ready to start. The locomotive stood a little beyond the west end of the platform, and the

mail car was a short distance east of the end of the platform.
I suppose the platform is about forty feet wide.   I knew the
train 53 was due, and was about to come up to the station.
The diagram heretofore presented to the witness is about
correct."

Without setting out here the testimony of other witnesses,
we will say that the statements of all the other witnesses
were in substantial harmony with that of the appellee.   The
evidence, when taken together, showed that the appellee had
placed his horse and wagon at a point near the southwest
corner of the depot platform, and six to eight feet from the
railroad track, on the south side of the platform.   There was
another track just on the north side of the platform, and
running parallel with it and with the track on the south side.
The platform on the west end was about forty-one feet wide,
and the respective tracks were but few feet from the north
and south sides of the platform.

Train No. 54, from the south, had come in, and was stand-
ing on the track north of the platform, headed for St. Louis,
awaiting the arrival of No. 53 from St. Louis, which was to
come in on the south track up to the station before No. 54
was to start.   These facts were known to the appellee.

Under these circumstances, and in this condition of things,
the appellee left his horse standing, unguarded, with one
trace unhitched, and no other fastening than the lines tied
to the singletree, when he crossed over to train No. 54,
some fifty feet away, " to assist in getting the mails," as he
says. At this juncture train No. 53 approached on the south
track, near which the horse was standing.

The animal became frightened at some noise or movement
and ran upon the track in front of the approaching train,
where it and the wagon sustained the injury complained of.
It is undoubtedly true that the appellant's servants in charge
of and operating the train were guilty of negligence in not
placing the proper lights and giving the signals as required
by law.   Still the question remains, was the appellee him-

The Louisville and Nashville Railroad Company v. Eves.

self free from fault? The question is whether the act of leaving the horse unattended and unhitched, except in the manner stated, and within from six to eight feet of a railroad track upon which a train was momentarily expected to arrive, did not constitute negligence on the part of the appellee.

The appellee testified that there was no other place where he could have left the horse, as the street on the east was blockaded with hacks and omnibuses; that the transfer clerk had ordered him to occupy that place with his wagon and horse; that there was no place to hitch his horse; that he " could not afford to hire a person to watch " the horse, and " if one had been holding him, he might not have been able to keep him from getting onto the track."

It was the duty of the appellee, if he had no other and safer place to leave the horse, either to give him in charge of some one or stay with him himself, unless he could have been securely tied. The fact that other places were blockaded will not excuse him from exercising proper care over his animal. The directions from the transfer clerk did not compel him to violate this plain legal and moral obligation. That individual, we apprehend, had no control over the appellee's horse and vehicle. That appellee " could not afford to hire a person to watch " was a misfortune, but not such a one as would justify him in jeopardizing the lives and property of other people by leaving his horse insecure and unguarded at a moment when a train was about to approach to within a few feet of him. As to what might have occurred if the horse had been held by some one we can not know. We can only take cognizance of what was done. It is safe to say, however, that if in spite of proper precautions on the part of the appellee, the appellant had negligently injured his horse and wagon, there would clearly be a liability where there is none now.

The law required at least ordinary diligence of the appellee, and if, by exercising such diligence, he might have

avoided the injury, even if such injury was occasioned by the appellant's negligence, it is a case of mutual fault, and the courts can not attempt to make any apportionment thereof between the parties. There was no attempt to ascribe to the appellant, or its servants, such wanton, or wilful misconduct as would inculpate it in spite of the negligent acts of the appellee. Nor was the complaint framed upon that theory.

It is questionable whether the act of leaving a horse, in a public thoroughfare, unattended and unhitched, is not of itself negligence, without the presence of the other attendant circumstances in this case.. On this question, however, we do not decide anything. See Wharton Negligence, 913, 915.

In an Indiana case, where a team of horses, attached to a heavy wagon, had been left by the driver in a public street, near a railroad track, hitched by the lines only to the lever of a rubber block, and escaped from his control and ran away, injuring another person's property, the owner of the team was held guilty of negligence. *Wagner* v. *Goldsmith,* 78 Ind. 517.

Greater precaution and diligence are required of a party who has knowledge of the danger, and is familiar with all the surroundings, than of one who is ignorant of these things. Thus it was said in *Indiana, etc., R. W. Co.* v. *Greene,* 106 Ind. 279, by Mitchell, J.: " Having knowledge of the extraordinary danger * * * the most rigid prudence and extraordinary caution were demanded."

The failure of the appellant's servants to give proper signals, or use other precautionary measures as required by law, is, of course, such negligence as would ordinarily render the company liable for an injurious result therefrom. Nevertheless, there can be no recovery except it appear affirmatively that the person whose property was injured was free from contributory negligence. *Louisville, etc., R.*

R. Co. v. *Schmidt*, 81 Ind. 264; *Ohio, etc., R. W. Co.* v. *Hill*, 117 Ind. 56.

While we do not decide that it is negligence *per se* to leave a horse untied and unattended for a short time in a public street, we do decide that it was negligence for the appellee to leave his horse under the circumstances and in a condition of such danger and risk; and in this we think the authorities abundantly support our conclusion.

In a California case where a pedler had left his team of horses standing unhitched in front of a house near a railroad track, while he went into the house with some vegetables trying to sell them, and when he knew the cars passed there every day at about that hour, but knew his horses were accustomed to railroad trains and were not frightened at them, and where the train, coming along at a greater speed than that allowed by city ordinance, frightened the horses, in consequence of which they were injured by the train, the court said : " The act of the plaintiff in leaving his team unhitched, in close proximity to the track of the railroad, at a time when the train usually came, was negligence on his part in the first instance." *Deville* v. *Southern, etc., R. R. Co.*, 50 Cal. 383.    See, also, *Norris* v. *Kohler*, 41 N. Y. 42; *Morris* v. *Phelps*, 2 Hilt. (N. Y. C. P.) 38; *Buckingham* v. *Fisher*, 70 Ill. 121; *Gray* v. *Second Avenue R. R. Co.*, 65 N. Y. 561; 2 Thompson Neg. 1209; 3 Lawson Rights, Rem., etc., 2104.

When the appellee left his horse unguarded and unhitched, and in such close proximity to the railroad track, upon which he knew it was morally certain a train would approach to within a few feet of where his horse was standing, with another train standing on a track not more than fifty feet away, ready to pull out, and the thoroughfares in the immediate vicinity blockaded with horses and vehicles, as he knew, he was guilty of negligence, and whatever may have been the fault of appellant's servants in failing to ring the bell, place

the proper headlights, or take other precautions, he can not recover.

Had the horse run against some other person or property, and inflicted injury, there is no doubt that the appellee would have been liable in damages.    That no such casualty as this had to be answered for by him, and that he escaped with but the loss of his horse and wagon, considerable though this may have been to him, is a matter upon which the appellee has just cause to congratulate himself; but there is no basis for a recovery in his favor upon the facts proved in this case.

There being positive and uncontradicted evidence of contributory negligence on the part of the appellee, we think the appellant was entitled to a new trial for that reason.

Other errors are assigned, but it will not be necessary to notice them.

The judgment is reversed, at the costs of the appellee, and the cause remanded to the court below, with instructions to sustain the motion for a new trial.

Filed April 29, 1891.