No. 632.

## HOWE ET AL. *v.* OHMART.

NEGLIGENCE.—*Personal Injury.*—*Trespasser.*—*Licensee.*—*Invitation.*— *Degree of Care.*—*Proximate Cause.*—*Contributory Negligence.*—A., by invitation of certain students of a college and members of a literary society, which held its meetings in the college building, was in attendance at a meeting of the society. A. had also, previous thereto, been solicited by the principal of the college to become a student therein, and by him invited to visit the college; and said principal often announced the meetings of the society at the chapel exercises and urged a good attendance, and had advertised the literary society as one of the principal features of the school. The building was incomplete; the basement and one room on the first floor being the only parts completed. The hallway extending through the building from north to south, and through which the society room was reached, was completed, except at the north end and on the

Howe *et al. v.* Ohmart.

west side of the hall was an opening left for a stairway to the basement, over which a workbench was usually kept. A., with other members of the society, entered the building from the south, proceeding through the hallway to the society room near the north end of the hall, the doorway of which was close to the stairway opening, said room being on the west side of the hall. Shortly after entering the room, A., in obedience to a call of nature, left the room, and passing through the doorway through which he entered, turned to the left and fell through the stairway opening, and was injured, there being no light in the hallway, it being dark and the workbench being sufficiently removed from the wall to allow him to pass between the wall and bench, he being ignorant of the opening through which he fell.

*Held,* that A. was neither a trespasser nor a mere licensee, but was upon the premises by implied invitation, at least, of the proper authorities.

*Held,* also, that the invitation need not be either special or direct, but may be implied from the facts and circumstances of the case.

*Held,* also, that as it was the duty of those in charge of the building to keep it in such condition as to protect those whom they had invited to it from dangerous pitfalls and obstructions, A. had a right to presume that this duty had been performed, and that the floor in the hallway was safe as a passageway, and that A. was only required to use ordinary care and prudence under the circumstances.

*Held,* also, that the facts do not disclose sufficient contributory negligence to reverse the judgment.

*Held,* also, that from all the facts and circumstances of the case, the jury was justified in arriving at the conclusion that the negligence of the college authorities was the proximate cause of the injury.

SAME.—*When a Question of Law.*—*When a Question of Fact.*—The question of negligence or contributory negligence becomes one of law for the court, when the facts are admitted; but when the facts are in dispute, it becomes a question of fact for the jury, under the instructions of the court.

From the Wabash Circuit Court.

*M. H. Kidd, N. G. Hunter* and *J. W. Arthur,* for appellants.

*C. E. Cowgill, H. B. Shively* and *H. C. Pettit,* for appellee.

REINHARD, C. J.—The only available assignment of

VOL. 7—3

error is that by which appellants challenge the correctness of the overruling of the motion for a new trial. That motion calls in question the sufficiency of the evidence to sustain the verdict.

The action was brought by the appellee, against the appellants, for damages sustained in a personal injury received by the appellee through the alleged negligence of the appellants.

The St. Joseph Conference of the United Brethren Church owns the college building connected with, or under the control of, said church, at North Manchester. The corporation, as such, the trustees of the college, and the appellant Howe, were made defendants to the action. The college building, in which the accident occurred on the 26th day of December, 1889, was not finished, except the basement and one room on the first floor, which was then used for recitations. A hall ten feet wide extended north and south through the building. The recitation room referred to was at the north end of the hall and on the west side of the building. The entrance door to this room was near the south end of the room. Within twenty inches north of this door, and on the west side of the hall, extending from the west wall out, there was an open space in the floor, left for the purpose of a cellar stairway, which space was ten feet in length and four feet wide, over which a workbench ten to twelve feet long and about thirty inches wide had been placed diagonally so that it covered a portion, if not all, of the opening at the south end. At the north end of the opening stood a ladder leading to the basement, the top end projecting some distance above the hall floor. The space at the north end not covered by the ladder was filled by a coal oil barrel standing on the floor north of the opening and to the west of the ladder.

There was connected with the institution a literary so-

ciety, for the benefit, and more immediately under the control of, the students of the college. This society had its regular meeting at 7 o'clock P. M. on the evening of the accident, in the recitation room. The appellee, who was not a student at the institution, came in company with two others, who were members of the society, to attend the meeting.

They entered the building at the south end of the hall, which was not lighted, and reached the recitation room, where the meeting was to be held, a little before seven o'clock. A few minutes after entering, the appellee, having occasion to go out to answer a call of nature, stepped back into the hall from the room, and, turning to the left of the door to go north, fell into the opening below and received the injury complained of.

The cause was tried by a jury, and the appellee recovered. It is contended that this was wrong, for the reasons:

*First.* That appellee was a trespasser.

*Second.* If not a trespasser, that he was, at most, but a licensee, and appellants owed him no duty.

*Third.* That he was guilty of contributory negligence.

*Fourth.* That it was not shown that appellants' negligence caused the injury.

If the appellants have succeeded in establishing either of these propositions, of course the recovery can not be upheld.

The appellant Howe was the superintendent and principal of the college, and was also the superintendent of the erection of the building, the work being under his direction. The evidence tends to show that the appellee had visited the school as a student eight weeks during the summer preceding, but not in the same building; that he was, at the time of the injury, not a student nor member of the literary society, but was teaching school

at another place. There was evidence to the effect that the rules of the society did not admit visitors to the meetings except on "induction nights," and the meeting in question was not such. The appellee attended the meeting upon the immediate invitation of one of the students and members who accompanied him.

There was nothing to show that appellee had any knowledge of the rule referred to.

The evidence further tends to prove that before the accident those in charge of the institution had certain circulars printed, setting forth the advantages of the college, and that Prof. Howe told the students they could send these out if they wanted to do so; and that a good attendance upon the meetings was desired; that the appellee received, through the mail, a catalogue of the school, setting forth, among other things, its advantages, and advertising the literary society in question as one of the desirable features; that Prof. Howe was in the habit of announcing the meetings of the society at chapel; that Howe furnished the wood for the fuel of the society; that Howe asked the appellee in person to come and visit the school and the building, and to come back as a student.

From this evidence, we are of the opinion the jury were justified in drawing the inference that the appellee was neither a trespasser nor a mere licensee, but was there upon at least the implied invitation of the college authorities.

It is doubtless the rule, that, before there can be any liability on account of negligence in such cases, it must appear that the party complained of was under some legal duty or obligation to the person injured. *City of Indianapolis* v. *Emmelman,* 108 Ind. 530; *Penso, by Next Friend,* v. *McCormick,* 125 Ind. 116; *Thiele* v. *McManus,*

3 Ind. App. 132; *Carskaddon* v. *Mills*, 5 Ind. App. 22, 31 N. E. Rep. 559.

In view of the facts that the college authorities had advertised the literary society as a feature of the school, if not in the regular curriculum, at least as an adjunct or branch of the college course, of which every student might avail himself; that before the injury a catalogue announcing this, among other advantages, had been received by the appellee; that Howe, the superintendent, had directed circulars to be sent out containing the announcement of the existence of the society; that the same superintendent had announced the meetings of the society, and urged a good attendance upon the same; that he personally solicited the appellee to come and see the building, and to return to the school as a student, we think the jury had ample warrant for its inference that the appellee was present at the invitation of the appellants, and was not there merely at their sufferance, much less as a trespasser.

As was said by the Supreme Court, in a case involving the right to recover for an injury received by the negligence of another: "If, however, the owner or occupant of lands, by any enticement, allurement or inducement, causes others to come upon or over his lands, then he assumes the obligation toward persons so coming to provide a reasonably safe and suitable way for that purpose. An owner may not by invitation, either express or implied, induce another to come upon or pass over his premises without keeping them in such condition of safety as to admit of his passing over by the means designated or prepared without injury, provided he uses due care. To make the owner or occupant liable for an injury received by one passing over his premises, something more than a mere passive acquiescence in the use of his land by others is necessary. So long as his lands

are used by others, be it ever so frequent, for their own convenience, he is not liable. But if, by some act or designation of his, persons are led to. believe that a way or path over premises was intended to be used by travelers, or others having lawful occasion to go that way, then, as to such persons, the owner or occupant comes under an obligation to keep it free from dangerous obstructions or pitfalls which might cause them hurt. The inducement must be equivalent to an invitation, either express or implied; mere permission is not sufficient.'' *Evansville, etc., R. R. Co.* v. *Griffin*, 100 Ind. 221. See, also, Bigelow on Torts ( 3d ed. ), p. 288, section 7.

It was held by the Supreme Court, in a case where the proprietors and managers of a public fair permitted target shooting, without giving notice to the plaintiff, who was an attendant at the fair with horse and carriage, and whose horse was shot and killed by one of the target shooters, that the defendants owed such a duty to the public as required them to give protection against such injuries, and the failure to so protect persons visiting such fair rendered the defendants liable for damages. *Conradt* v. *Clauwe*, 93 Ind. 476.

In a Massachusetts case, where a religious society gave notice of a meeting to be held in its house of worship, inviting the members of other churches to attend, a person so invited, while on the premises, was held not a mere licensee, and was entitled to maintain an action for a personal injury suffered by him from the dangerous condition of the premises, he himself having exercised due care. *Davis* v. *Central Congregational Society*, 129 Mass. 367, 37 Am. Rep. 368.

It is not necessary that the invitation should be special, or even direct. It may be implied from the circumstances and facts of the case. He who uses a building for certain business purposes must keep it in a reasonably

safe condition for all who visit the building for the pur-
pose of transacting the ordinary business there, other-
wise he is liable to one injured.    *Welch* v. *McAllister*, 15
Mo. App. 492.   See, also, Campbell on Neg., sections
43, 44; *Powers* v. *Harlow*, 53 Mich. 507, 51 Am. Rep.
154; 16 Am. and Eng. Encyc. Law, 411, *et seq.*

These authorities will suffice to illustrate the principle
upon which we base our conclusion upon this branch of
the case.   The jury were amply justified in their con-
clusion that the appellee was neither a trespasser nor
licensee, and that the appellants owed him the duty of
protection from dangerous pitfalls or other obstructions,
while he was in the building, under the circumstances of
the case.

We pass to consider the question whether, under the
evidence, the appellee was guilty of contributory negli-
gence.

The evidence tends to show, that at the time the appel-
lee and his associates entered the hall it was dark; that
the hall was not lighted, some of the witnesses testifying
that it was so dark that one could not see his hand before
his face.   Appellee had been in the building once dur-
ing the early portion of the winter, but the floors in the
hall had not been put down at that time.   There was no
evidence to the effect that the appellee was aware of the
opening in the hallway; on the other hand, we think the
evidence clearly shows that he was not, and that he had
no notice of the same whatever.   The floor was other-
wise safely put down, and we can not concur in the view
that appellee was bound to look for openings or obstruc-
tions.   At the moment the appellee stepped out of the
door of the room in which the meeting occurred, it ap-
pears that the workbench which had been placed over
the hole was some distance away from the west wall at
the south end of the opening.

The jury had a right to conclude that it was not unreasonable that a person unacquainted with the real condition of things should turn to the left immediately upon coming out of the door, and pass behind the bench in order to reach the north end of the building, rather than to follow others around on the right of the bench and pass up the center or east side of the hall. There was evidence that a lamp was burning in the recitation room, and one also in the room opposite. These lamps, it was shown, were fastened to the wall at an elevation nearly, if not quite, in line with the transoms over the doors, and through these some light was thrown out into the hall, but that this light was deflected to or near the point where the appellee was, or revealed to him the dangerous opening in the floor or any obstruction upon his way out, is not made to appear; but, on the contrary, there was evidence from which the reverse might easily and reasonably be inferred. Nor can we judicially know from the laws of refraction, as contended, that the place of the accident was in any degree visible to one in appellee's position, for the very simple reason that all the surrounding conditions, such as the intensity of the rays emitted from the lamps, etc., are not known to us.

Do these circumstances and facts coerce the conclusion that the appellee was negligent in falling through the opening and sustaining the injury of which he complains?

It being the duty of those in charge of the building to keep it in such condition as to protect those whom they had invited to it from dangerous pitfalls and obstructions, the appellee had a right to assume that this duty had been performed, and that the floor in the hall was safe as a passageway over which to go in and out. *City of Indianapolis* v. *Gaston*, 58 Ind. 224; *Apple* v. *Board, etc.*, 127 Ind. 553.

Doubtless the appellee might have avoided the accident had he passed on the east side of the bench, and if it had been proved that he had knowledge of the dangerous opening, this would be a complete defense. But he was required to exercise only ordinary care and prudence under all the circumstances. If he did this, and acted reasonably upon appearances, it can not be held that negligence must be imputed to him. See *Chicago, etc., R. R. Co.* v. *Hedges, Admx.*, 105 Ind. 398; *Nave* v. *Flack*, 90 Ind. 205; 4 Am. and Eng. Encyc. Law, 19.

The question of negligence or contributory negligence, when the facts are admitted, is one of law for the determination of the court. *Louisville, etc., R. R. Co.* v. *Eves*, 1 Ind. App. 224.

But where the facts are in dispute, and where there is evidence from which negligence may or may not be inferred, it then becomes a question for the jury, and is properly left to them, under the instructions of the court. As it was said by the Supreme Court: "So long as the facts stated do not force the legal conclusion that there was contributory fault, the averment that there was no such fault entitles the plaintiff to have it submitted to the jury as a question of fact, whether there was such negligence." *Pittsburgh, etc., R. W. Co.* v. *Wright*, 80 Ind. 182.

And it has been held by this court that where, in such a case, the jury passes upon the question of contributory negligence, the verdict will not be disturbed on appeal, except in very clear cases. *Kentucky and Indiana Bridge Co.* v. *Quinkert*, 2 Ind. App. 244.

We have therefore reached the conclusion that there is no such proof of contributory negligence as would justify a reversal.

The appellants' counsel further contend that if the bench did not sufficiently cover the opening at the point

where appellee fell through, it was because some third person had moved it away from the wall a sufficient distance to admit of the passing through of the appellee's person, and that for this act the appellants can not be held accountable.

This brings us to consider the question of the proximate cause of the injury.

It is no doubt true, as a general rule, that there can be no actionable negligence for an injury directly caused by the act of an intervening human agency other than the defendant's. Thus, where a person sold gunpowder to a child, who gave the powder to its parents, and the latter afterward allowed the child to have the powder, the act of the parents in negligently allowing the child to have the powder was held to be such an intervening act as to break the causal connection between the defendant's original act and the injury caused. *Carter* v. *Towne,* 98 Mass. 567, 96 Am. Dec. 682.

In such cases the question that must be determined is whether the injury is the natural or probable effect of the wrong complained of, or in other words, whether the defendant must have reasonably foreseen the probable consequences that would naturally result from such an act. Bishop on Non-Contract Law, section 41, *et seq.* See 16 Am. and Eng. Encyc. Law, 446, *et seq.*

It is claimed by the appellants' counsel that the uncontradicted evidence shows that up to late in the evening of the day of the injury the workbench stood directly against the west side of the wall, or so nearly so that it would have been impossible for a person to fall through between the bench and the wall. From this, the deduction is made that between the time when the bench was last seen in this position and the time the injury occured, that is, between 6:30 and 7 P. M., the bench must

Howe *et al. v.* Ohmart.

have been moved by some third person, from the wall, to where it was when the appellee fell into the opening.

If it be admitted that the bench was moved by some other person than the appellants or their employes, the question still remains whether the original mode of protecting the opening, which we assume was there for some legitimate purpose, was such as would probably result in the occurrence that produced the appellee's injury.    If it was, then the appellants may still be held responsible.

Had the appellants, during the meeting of the society, covered up the open space with planks, or provided the hall with ample light so that the obstruction could have been easily seen by any one approaching it, a different question would be presented.    The darkness of the place, as testified to by a number of witnesses; the comparative ease with which one end of the bench could be removed; the close proximity of the opening to the door of the room where the meeting was being held, were facts which made the result that followed exceedingly probable.    (These circumstances, we think, justified the jury in treating the acts of the appellants as the efficient cause of the injury)

Moreover, it is by no means clear that the jury had not some evidence upon which they might correctly base a conclusion that the bench had not been moved, but occupied the same position in which it had been left by those who had placed it there earlier in the day.

We think the evidence fairly tends to prove every material fact necessary to a recovery.

Judgment affirmed.

Filed Feb. 28, 1893; petition for a rehearing overruled June 12, 1893.