Lotz, J.
The appellant is a corporation organized under the laws of the State of Iowa, and engaged in manufacturing pumps and lightning rods. In the year 1890 it owned and operated a large factory situate in the city of Greencastle, Indiana, and appellee was employed by, and was working for, it in its said factory. While so engaged at work, he sustained severe personal injuries. He brought this action to recover damages, *39 alleging tliat such injuries resulted from the negligence of the appellant.
Tie stated his cause of action in two paragraphs of amended complaint. The appellant moved the court to require the appellee to make each paragraph more specific. - This motion was overruled, and appellant then demurred separately to each paragraph. The demurrers were overruled, and appellant filed an answer in two paragraphs, the first being the general denial, and a demurrer was sustained to the second.
The cause was tried by a jury, which returned a special verdict. Appellant made a motion to require the jury to find specially certain additional facts. This motion being overruled, it then moved for judgment in its favor on the special verdict. This motion was overruled, .and it then made a motion for a new trial. This last motion was also overruled, and the court then rendered judgment in favor of the appellee on the special verdict' in the sum of $3,000. Appellant excepted to each one of these adverse rulings, and has assigned each of them as error in this court.
That part of the first paragraph of the complaint necessary to be considered in determining the correctness of the ruling on the motion to make more specific and the ruling on demurrer, is as follows:
“That he (appellee) was employed to work for the defendant (appellant) by one Richard W. Crawley, who was then and there, and was at the time of the happening of the grievances hereinafter complained of, the agent and the foreman of said defendant in operating said factory; that as such agent and foreman the said Crawley ■employed and kept the time of all the employes who worked in said factory, and assigned to each employe the work he was required to do, directed what work and how it should he ■done, and designated the place ivhere each employe should *40 work; that the said agent and foreman had general supervision over all the employes of the'defendant in'said factory, and full authority to discharge such as he deemed it necessary to discharge; that the plaintiff, after being’so-employed as aforesaid, was directed by said agent and foreman to take charge of, operate'and manage a certain auger, run by machinery, used in said factory, for boring out wooden tubing for pumps; that said auger and machinery thereto attached was located on the ground floor and against the south wall of a room on the south side-of one of the factory buildings of the defendant; that after said wooden tubing was bored, the plaintiff was directed by said agent and foreman to set them on end inclined-, to the north and to rest the upper ends thereof against a-framework overhead, made for the purpose, and located about eight feet north of said auger, in said room; that on said 29th day of July, 1890, while the plaintiff was engaged in the' discharge of the duties of his employment in ■ operating said auger and boring out said wooden tubing, the said agent and foreman negligently and carelessly went in behind, and negligently and carelessly, at the same time, ordered, directed and procured another employe of defendant, who was then and there acting under the orders and directions of said foreman, to go in behind and on the north side of a number of pieces of said wooden tubing which had been placed on end against said framework as aforesaid, well knowing that plaintiff was busily engaged at his work at said auger, and without in any manner notifying the plaintiff of their presence, to perform some¡ special service for the defendant in no manner connected with or pertaining to the work of the plaintiff, the exact character of which is to this plaintiff unknown, and in attempting to do said work so ordered by said foreman, by-reason of the limited space in which they were attempting. to do said work, they came in contact with said pieces of *41 wooden tubing, so placed on end as aforesaid, and thereby caused three of said pieces, each of which was four inches thick, four inches wide and ten feet long, to fall over upon and across the small of the bach of the plaintiff, to his great injury; that at the time the said pieces of wooden tubing fell upon the plaintiff, as aforesaid, he was leaning over said auger as the nature of his work required him to do, with his back toward said pieces so set up as aforesaid, and was wholly ignorant of the fact that the said foreman and other employe were behind the same; that immediately north of the place where said pieces of wooden tubing were placed on end, as aforesaid, there was located certain machinery used by the defendant in said factory; that the space intervening between said machinery and said pieces of wooden tubing did not exceed two feet in width; that there was not sufficient room in said space to enable two persons to enter the same or perform work therein, without endangering the safety of employes or making the working place on the south side of said tubing unsafe, all of which was well known to said foreman, when he entered and directed said other employe to enter said space; that the said injury to the plaintiff was not caused by any fault or negligence on his part.”
The second paragraph of the amended complaint is drawn upon the same theory as the first, and contains the same allegations with reference to the powers, duties and authority of Crawley, as agent and foreman of appellant, and gives the name of the employe who entered the space with Crawley as Jack Eller; that the said Eller, while performing said work, came in contact with said tubing and caused the same to fall.
The additional allegations which it contains, and which are important, are the following: “That for some time prior to the happening of the injury to the plaintiff, as aforesaid, the said Eller had been in the service of the *42 defendant as an employe; that, as such employe, the said Eller had not been assigned any special work or place to work in said factory, but was employed at different kinds of work at different places in said factory from day to day, under the orders and directions of the said foreman, and had no working place in the vicinity of the plaintiff’s said working place; that the said Eller was of careless and negligent habits, and did not exercise sufficient care and skill in the performance of the duties of his employment to make it probable that he would not cause injury to his coemployes; that by reason of the want of care and negligence of the said Eller, several of the employes of the defendant had been injured, of all which facts the defendant and the said foreman had full notice and knowledge of at the time of, and prior to, the injury to the plaintiff.”
We have italicised parts of the first paragraphs above set out, for the purpose of calling special attention to them. It will be seen by an examination of the allegations, that Crawley had general supervision and control over all of the employes in the factory. He directed what work and how it should be done, and designated, the place where each employe should work. And it also appears that while the appellee was in the place, and engaged at the work assigned to him, Crawley, by his act and his command given to another employe, suddenly rendered appellee’s working place unsafe and dangerous. Of this fact Crawley had full knowledge, and appellee had no knowledge.' Appellee sustained injuries because of the unsafe condition of the place in which he was engaged at work. Fhe act and command of Crawley are characterized as being negligent, and it is averred that the appellee was free from contributory fault. The theory of the complaint, as we construe it, is that the appellant failed in its duty to keep the appellee’s *43 working place reasonably safe. If Crawley were the master, and he and an employe should have been engaged in placing dynamite bombs near appellee’s working place without appellee’s knowledge, and an explosion should have occurred, resulting in injury to the appellee, the hypothetical case and the actual case would be analogous.
The general rule is, that it is the duty of the master to provide his servant with a reasonably safe place in which to work. This duty is one imposed by law, and the master must respond in damages to his servant, who, without fault, sustains injury by reason of its violation. This duty is a continuing one, and rests upon the master at all times while -the relation of master and servant exists. The cause of action sought to be charged in each paragraph of the complaint, is negligence. This negligence lies in the violation of the appellant’s duty in failing to keep appellee’s working place reasonably safe. The difficulty which arises in this case, is to determine the relation existing between Crawley and the appellee at the time of the injury. I.f they were fellow-servants, then the appellant is not liable, and the complaint is insufficient. If they stood in the relation of master and servant, then the appellant may be liable, provided the complaint is sufficiént in other respects. In an-action by a servant against the master for a violation of duty in failing to provide a safe working place, the complaint must aver that the master knew, or state such facts from which it appears that the master might have known by the exercise of reasonable care, that the place was unsafe. Where the master is charged with having done the negligent act with his own hand, and without the intervening agency of another, notice is involved in the act itself, and where such facts are averred they are equivalent to an allegation of notice.
In this complaint, however, we have the direct aver- *44 merit “that there was not sufficient room in said space to enable two persons to enter the same or perform work therein without endangering the safety of employes, or making the working place on the south side of said tubing unsafe, all of which was well known to said foreman when he entered.” If the foreman in entering such place was-in the performance of a duty laid upon him by the master then his knowledge will be imputed to the master.
It is also essential to allege that the plaintiff did not have notice of the unsafe condition of the working place, or facts from which the want of such knowledge follows as a necessary inference. Here we have the general allegation of freedom from contributory negligence; this of itself is usually sufficient to negative notice; but it is not necessary to rely upon this principle or determine whether it applies to this action, for here we have the direct averment that Crawley and the other servant entered the narrow space “without in any manner notifying the plaintiff of their presence,” and that at-the time the tubing fell, plaintiff “was wholly ignorant of the fact that the said foreman and other employes were behind the same.” It was the presence of Crawley and the other employe in the narrow space and their engaging at work therein that produced the hazard. It is true that such machinery was designed for use, and it may have been reasonably safe for one person to engage at work in the narrow space, but it is ¿verred that two persons were required to and did engage at work in this limited space. The narrow space could not be occupied by the two persons at the same time and both engage at work therein without increasing the liability of displacing the tubing. The work these persons were ordered to do and were doing in said space was not the usual work required to be done there, but it is averred to have been a special service.
*45 The motion to make more specific was directed to each paragraph of the complaint, and sought to have each made more certain in substantially the same particulars. A complaint must proceed upon a single definite theory, and this theory must be determined from the general scope and character of its averments. To the theory so determined, the plaintiff must be held through all the different stages of the case, and upon it he must stand, or fall. Appellant contends that several distinct theories are suggested by the complaint; that its motion to make more specific was designed to compel the appellee to disclose the theory upon which he claimed a right to recover. Judging the complaint by the general scope and tenor of its averments, we think it apparent that it proceeds upon the theory that the appellant is liable to the appellee for the failure of Crawley to discharge properly the master’s duty laid upon him. Other theories may be suggested, but this is the controlling idea which pervades the whole pleading. The court has the right to construe the pleading and determine the theory most apparent and clearly outlined by the facts stated, and require the case to be tried upon that one theory. Batman v. Snoddy, 132 Ind. 480.
There is no available error in overruling the motion to make more specific. Having disposed of this preliminary question we proceed to consider the relation existing between Crawley and the appellee as made by the averments of the complaint.
Appellant contends with signal force and ability that neither paragraph of the complaint is sufficient to withstand its demurrer for want of facts. It is insisted that the cause of action made by each paragraph rests upon the acts and conduct of Crawley and the other employe, Eller, and that the facts averred show them to have heen fellow-servants with the appellee at the time of the *46 injury, and that, therefore, no liability arises as against the appellant. Appellee concedes that his right of action is based upon the conduct of Crawley, and that the allegations with reference to the other employe, Eller, are designed to show the aggravating negligence of Crawley’s conduct in increasing the danger to appellee. He asserts that Crawley’s position was that of vice principal, and that the appellant must respond for his negligent conduct.
In pleading negligence arising from the wrongful conduct of another,'it is essential that the complaint shall contain (1) an allegation of duty owing by the defendant to the plaintiff, or facts and circumstances from which the duty can be inferred; (2) a failure in the performance, or an imperfect performance of such duty by the defendant; and (3) that such failure or breach of duty was the natural and proxijnate cause of the injury and damage to the plaintiff. The acts which caused the injury should be clearly and distinctly stated, but .the pleader need not descend into unnecessary detail.
There is no proposition of law any better settled in this State than that the master, who has been careful in the employment of his servants, and has used diligence h> keep them competent, is not liable to a servant who has been injured by the negligence of his fellow-servants. The rule itself is of easy comprehension, but its application to particular facts and circumstances often gives rise to many perplexities. The master can not screen himself from responsibility by casting his duties upon another. The person upon whom such duties are laid, no matter what his rank or title may be, whether superintendent, manager, agent, foreman or boss, is, when he performs the master’s duty, a vice principal. In legal contemplation it is the same as if for the moment the master had appeared and performed the act. If the act *47 be negligently done, and injury result, the master must respond in damages. The master’s power over a given enterprise or industry is absolute. At his command it springs into existence or ceases to be. To govern, control and direct are the peculiar functions of the master. Any given enterprise is embraced within certain well defined limits. The master desires to accomplish certain results. To attain his ends he calls to his aid buildings, machinery, appliances, tools, and servants.
The position of a servant is that of a subordinate. He is subject to the will of his master. He works in such, places and does those things which his master directs. The work of the master may be divided into departments, and the work of each department may be again subdivided and assigned to various servants. Each servant, in the performance of the work so assigned to him, must necessarily exercise a certain discretion in the manner of its performance. He is required to use care and skill. In the performance of such work, he is discharging the duties which he owes to his master. If he perform such work negligently and injury result to a person engaged in performing the same or similar work, the master is not answerable to the injured servant if the master was without fault. The same person may perform various parts of the servant’s work. The master may also lay upon the same person a part or all of the master’s duties and require of him that, while not performing the master’s duty, he perform a servant’s duty. The same individual may combine in his own person the functions of both master and servant. When such person performs a servant’s duty, no matter what his rank or title may be, whether superintendent, manager, agent, foreman, or boss, he is, in the performance of such duty, deemed only a fellow-servant, with others engaged in the same common business. Rank, grade, or relative sta-. *48 tion, in most cases, throws but little light upon the inquiry as to whether two persons at a given time stood in the relative position toward each other of fellow-servants or of master and servant; for it is not a question of rank, but a question of duty that must determine their relation. A summary of the duties which the master owes to his servants,, and the duties which the servants owe to their master, and the duties which follow-servants owe to each other, together with the hazards assumed in the employment, may aid in determining the questions before us.
It is the duty of the master to provide his servants with safe working places; to provide for their use safe machinery, appliances, tools and implements; to provide .safe materials with which to work; to provide careful and competent fellow-servants; to keep machinery, tools and implements in repair, and working places in safe condition; to take notice of the liability of machinery and appliances to wear out and become defective with age and use; to instruct the young and inexperienced servants as to their duties, and warn them of danger and how to avoid it; to regulate and so conduct his business that his servants may be the least exposed to danger, and to do nothing by which the danger to his servants may be unnecessarily augmented.
The servants may repose confidence in the prudence and caution of the master, and rest upon the presumption that he has discharged, or will discharge, all the duties which the law enjoins upon him.
It is the servant’s duty to his master to be diligent and render him skill and care in performing the work assigned to him; to be careful and watchful of the master’s property and interests, and to advise him of defects in machinery and appliances, and the negligence of fellow-servants, that come to his knowledge. It is a duty he owes to his fellow-servants that he perform the work as *49 signed to him with care and prudence, so that by no default of liis an injury befall them.
The law does not require unreasonable or impossible things of either the master or the servant. The master is not required to furnish buildings, machinery and appliances that are safe beyond peradventure; nor is he bound to provide the latest and most improved machinery and devices. When lie has exercised reasonable care in providing places, machinery and appliances, and in the employment of his servants, and lias exercised reasonable supervision to keep the places, machinery and appliances safe, and to see that his servants continue prudent and careful, liis duties are done.
The servant assumes all the risks ordinarily incident to his employment. He is presumed to have contracted with reference to all such hazards, and to receive-compensation commensurate with the dangers assumed. He is bound to take notice of such insecurity, defects and infirmities in places, machinery and appliances as are open and apparent; but he is not required to search for such infirmities. He is also bound to take notice of the unskillfulness and negligence of his fellow-servants that are open and apparent.
If he continues in the employment of the master after having knowledge of such conditions, ordinarily he assumes the attendant hazards. As a skillful servant may sometimes become unskillful, and a careful servant some» times become negligent in the discharge of the duties assigned him, if injury result to a fellow-servant from such conduct the master is not liable. The risk of injury from the negligence of a fellow-servant under such cir» cumstances, is one of the hazards assumed by the serv» ant when he accepts employment.
The foregoing propositions are so well settled that wo *50 deem it unnecessary to cite authorities in support of them. It is true they are general rules to which there are many exceptions depending upon particular circumstances, but with the exceptions we are not here concerned.
Bearing these principles in mind we will endeavor to determine the relation existing between Crawley and the appellee at the time the injury was inflicted. If they were fellow-servants, then the appellant is not liable. If they occupied the relative positions of master and servant then the appellant is liable unless some other rule of law intervenes that precludes the right of recovery.
In this connection it is interesting to note the varying decisions of the Supreme Court of this State bearing upon this intricate question.
In Gillenwater v. Madison, etc., R. R. Co., 5 Ind. 340, the plaintiff was a carpenter, and was employed by the defendant to frame and build a bridge on its road across Sugar Creek. While engaged in said work, the company directed him to proceed on its cars to Greenwood, and assist in loading timbers for the bridge. While thus on the cars, the defendant so carelessly managed the train that the cars were thrown from the track and down a bank,'and permanently injured the plaintiff. It was held under these facts, that the plaintiff and the conductor and the engineer of the train were not fellow-servants, and that the company was liable. .
In Fitzpatrick v. New Albany, etc., R. R. Co., 7 Ind. 436, the plaintiff was employed by the defendant with other laborers to ballast a part of its road, by excavating gravel from certain gravel banks, loading it on the cars, and afterwards unloading and distributing it upon the road. The plaintiff boarded and lodged in Crawfordsville, two miles away from the gravel bank, and by agreement with the company he was regularly conveyed *51 to the town for his meals, and back again to the gravel pit. While being so conveyed on the gravel car to the pit, to engage in his work, the train, by the negligence of the engineer, ran into, and came into collision with a passenger train on the same road, and plaintiff sustained injuries. It was held that the plaintiff and the engineer were not fellow-servants.
In Ohio, etc., R. R. Co. v. Tindall, 13 Ind. 366, a set of hands, among whom was the deceased, Tindall, were at work graveling a portion of the defendant’s track. The gravel was carried from the pit to the place where it was used upon the road by means of a train of gravel cars. The same hands loaded and unloaded the cars, and rode back and forth to the places of loading and unloading upon them. While thus employed, the train, through the negligence of the engineer, ran against an ox and was thrown off the track, and Tindall was instantly killed. Upon these facts the court held the deceased and the engineer to be fellow-servants.
In Wilson v. Madison, etc., R. R. Co., 18 Ind. 226, the facts were substantially as follows: At the southern terminus of the railroad the company’s cars, machinery, and other property were kept, and at said place there were divers tracks and switches for the accommodation of freight cars, and at said place the company, as was its custom, coupled and uncoupled freight cars. The plaintiff was employed by the defendant and stationed at said place. His duties were various, such as working on the track, hauling and unloading gravel, and also to assist in coupling and uncoupling cars when ordered to do so, but was not connected with any train as a business. In attempting to uncouple a freight car he was injured by the negligence of those in charge of the train. He was held to be a fellow-servant with the engineer and conductor.
*52 In Slattery’s Admr. v. Toledo, etc., R. W. Co., 23 Ind. 81, it was decided that a brakeman on a train, and one whose duty it was to attend a switch, were fellow-servants.
In Chicago, etc., R. W. Co., v. Harney, 28 Ind.28, the averments of the complaint were that the plaintiff’s minor son was employed under a special contract to work on defendant’s road as a track hand. The defendant’s roadmaster, in charge of a construction train, ordered and compelled the Lack hand to assist in distributing ties from said train, and in so doing he was injured by the negligence of the roadmaster. It was held that the company was liable, but the decision seems to rest upon the compulsion averred. An extreme view of this subject was reached in Columbus, etc., R. W. Co. v. Arnold, Admr., 31 Ind. 174.
The facts of that case, briefly stated, are. that one Losee was in the employ of the railroad company as master machinist for the western division of the road and occupied that position at the city of Indianapolis. As ¡such he had the immediate control, direction and supervision of the engiiies and other machinery and of the repairs to the same, and of the engineers and firemen on the engines on that division of the road. He selected the engine, engineer and fireman for each particular service or train, and ordered them accordingly. He was a skillful and experienced master machinist and entirely competent to the proper performance of the duties required of him. By his direction one Lederer was put in charge of an engine as engineer and, with one Scott as fireman, in running an express passenger train between .Indianapolis and Columbus, Ohio ; while so engaged the boiler of the engine exploded when in the State of .Ohio and caused the death of Scott. The administrator of Scott’s estate brought suit against the company for damages.
*53 Ill the course of the opinion the court, by Elliott, C. J., said: “The board of directors of a railroad company are its immediate representatives, and occupy the relation of master to the various employes engaged in operating the road and superintending and performing the business of the company in its various departments. * * * The directors of such a corporation, from the very nature of the organization and the business in which it is engaged, are not expected personally to superintend the various operations of the road. * * * It is the duty of such a corporation to use every reasonable care in the proper construction of its road, and in supplying it with the necessary equipment, including properly constructed engines, and the necessary and proper materials for its repair, and the selection of competent, skillful, and trusty subordinates to supervise, inspect, repair, and regulate the machinery, and to regulate and control the operations of the road. If these duties are performed with care and diligence by the directors, and one of the per-, sons so employed is guilty of negligence by which an injury occurs to another [servant], it is not the negligence of the directors, or master, and the company is not responsible.” :
The effect of this holding is, that the master’s liability ceases when he selects a competent and careful subordinate and charges him with the execution of the master’s duties. This case has been often followed by that court. Sullivan v. Toledo, etc., R. W. Co., 58 Ind. 26; Gormley v. Ohio, etc., R. W. Co., 72 Ind. 31; Robertson v. Terre Haute, etc., R. R. Co., 78 Ind. 77; Brazil, etc., Goal Co. v. Cain, 98 Ind. 282; Indianapolis, etc., R. W. Co. v. Johnson, 102 Ind. 352; Capper v. Louisville, etc., R. W. Co., 103 Ind. 305; Cincinnati, etc., R. R. Co. v. McMullen, Admr., 117 Ind. 439; Ohio, etc., R. R. Co. v. Hammersley, 28 Ind. 371.
*54 The doctrine announced in Columbus, etc., R. W. Co. v. Arnold, Admr., supra, reached its utmost extreme in Robertson v. Terre Haute, etc., R. R. Co., supra. It appears from the facts of that case that a brakeman on a train en route was injured by collision with another moving train moving in an opposite direction. The collision was the result of the negligence of the train dispatcher whose duty it was to control the movement of trains. It was held that although the brakeman and train dispatcher were many miles apart at the time of the injury, and though their duties were distinct, they were nevertheless fellow-servants, and the master was not liable. The more recent decisions have a tendency to relax this extreme view.
The force of the holding in Columbus, etc., R. W. Co. v. Arnold, Admr., supra, was very much weakened by the case of Indiana Car Co. v. Parker, 100 Ind. 181, and in Taylor v. Evansville, etc., R. R. Co., 121 Ind. 124, it is practically overthrown.
The facts of the latter case, as averred in the complaint, were that the plaintiff, Taylor, was a machinist in the employ of the company, engaged in work in its shop under the control of its master-mechanic. The master-mechanic had entire control of the shop and employes therein, and of all work, and had authority to select and change machinery. The company desired to inspect the head of an equalizer on one of its locomotives for the purposes of ascertaining whether the key could be changed, and its master-mechanic ordered the plaintiff to disconnect the equalizer and remove it from its place, so that the master-mechanic might examine it. While engaged in removing the key under such direction the equalizer was negligently pulled out of its place by the master-mechanic, and fell upon the plaintiff and very severely injured him. In a well consid *55 ered discussion of the principles involved, the court held that at the time the plaintiff was injured the master-mechanic was performing the master’s duty, and was not merely a fellow-servant; and that the company was liable for his negligence.
In Nall, Admr., v. Louisville, etc., R. W. Co., 129 Ind. 260, it was averred that a heavy freshet caused a large accumulation of drift wood and other debris against one of the company’s bridges which spanned a creek, and endangered the safety of the bridge to such an extent that it was déemed necessary to call out a large force of men to save it from destruction; that the company entrusted to one Helms the sole and absolute supervision over and direction of work of saving the bridge; that under such authority the said Helms ordered and directed the deceased, Nall,*who was a track hand or section hand on said road, to go down off the railroad track into the stream and among the drift-wood and engage with others in the work of saving the bridge; that while so engaged the said Helm, as such representative, carelessly and wantonly commanded and caused one of the locomotive engines of the defendant to be suddenly started up and accelerated in speed, while the said Nall was down among the drift-wood, and the ropes thereto attached; that one of such ropes, being thus suddenly pulled and jerked, slipped from its place, and with great violence struck the said Nall and instantly killed him. On these facts it was held that the superintendent, Helms, and the deceased, Nall, were not fellow-servants; that the master’s duty to his servants to provide safe places for them to work is a continuing one, and requires him to use ordinary care to keep them safe, and if they become unsafe through his neglect, of are made unsafe through his act, he must answer in damages to the servant injured thereby, who is without fault.
*56 The case of Columbus, etc., R. W. Co. v. Arnold, Admr., supra, is expressly discredited, and Taylor v. Evansville, etc., R. R. Co., supra, followed.
In Justice v. Pennsylvania Co., 130 Ind. 321, the complaint averred in substance that the plaintiff Justice was in the employ of the defendant company as a section hand; that with a gang of four other men he was engaged in the repair of the company’s track; that one McCleary was the foreman of such gang, with full power to employ and discharge section hands; that it was tlae duty of said foreman to dii’ect the plaintiff, and the men with whom he worked, how, when, and where to work, and to direct and control the manner of using the various tools, implements, and other means used to perform said work, and had the absolute control and supervision of the use and movements of a certain hand car used by said gang in the prosecution of the work; that on said day, after their work was completed, the said gang, including the plaintiff and McCleary, got upon such hand car for the purpose of returning the same to the place where they were usually kept, when another gang, consisting of seven section men placed another hand car upon the track, and started after the one on which the plaintiff was situate; that each of said cars was propelled by hand power, applied by means of two levers, which levers rested upon an upright, projecting about two or three feet above the floor of the car. The second car was the larger one, and capable of being propelled twice as fast as the one on which the plaintiff was situated;' that the second car ran up to, and against the first, and caused it to greatly increase its speed, and caused the levers to work up and down with great rapidity so that it became, and was, difficult for the plaintiff to maintain his hold thereon, and that by reason of the small space on the platform of the car, it was dangerous *57 for tlie plaintiff to let go of the lever, that being his only means by which he could maintain his position on the car; that said McCleary knew that the rapid motion of said levers was dangerous to those upon said car, and that it was difficult for the appellant to retain his hold thereon, and so knowing carelessly and negligently failed to apply the brake .and check the speed of the car, though said brake was convenient to him, and not convenient to the plaintiff; that by reason of the rapid speed of the car, and the motion of the levers thereon, the hold of plaintiff became loosened, and said lever struck him, whereby he was greatly injured; that said McCleary carelessly permitted said other car to butt up against the car upon which the plaintiff was traveling, without any objection thereto, and permitted the gang thereon to propel and push ahead the first car at a very rapid rate of speed, and permitted the same to continue without raising any objection thereto or applying the brake until said accident occurred. We make this extended reference to this case for the reason that appellant’s counsel rely confidently upon it as being decisive of the case in hearing.
We do not think that case controlling, nor do we think it is in conflict with any of the previous decisions. There was nothing to show that the foreman, McCleary, had any power or authority over the men on the second car. The case proceeds upon the theory that MpCleary failed to apply the brake and check the car. This was an act that any one upon the car might have done. There is no charge that McCleary gave any command or direction, or failed to give any in relation thereto. If he had applied the brake, it would have been an act similar in kind to working the lever. If he applied it, but in a negligéfit manner and injury had resulted, it would clearly have been the act of a fellow-servant. His fail *58 ure to act at all could not be dignified into a failure to perform the master’s duty. That decision is correct in principle and sustained by abundant authority.
In a still more recent case, New Pittsburgh, etc., Co. v. Peterson, 136 Ind. 398, the allegations of the complaint were that the appellant was employed to do general work in and about the appellee’s coke yards, and to haul away ashes and other refuse, haul slack and clean the yards; that he was inexperienced in working with machinery as defendant well knew; that one Gus Lawrence was defendant’s agent to employ and discharge its workmen, including the plaintiff, and to control their work; that said Lawrence negligently directed the plaintiff to clean certain of defendant’s slack elevators, and the place of performing such work was dangerous in that it became necessary to stand close to the machinery of the elevators and upon the buckets thereof, and that if the machinery was put in motion while he was so occupied injury was sure to follow, of which dangers said defendant well knew; that plaintiff entered upon the work so assigned in the presence and under the direction of said Lawrence, and reposed confidence in the prudence and caution of the defendant, and that the defendant would notify him of the starting of the machinery so that he could remove from its danger; that while so engaged, and without notice or warning, the defendant negligently put the machinery in motion, whereby plaintiff, without fault or negligence on his part, was drawn into the guide of the elevator belt and buckets and sustained the injuries complained of. Under these averments it was held that the plaintiff and the foreman, Lawrence, were fellow-servants, and that the master was not liable for the injury.
It is hard to reconcile the last decision with the cases of Taylor v. Evansville, etc., R. R. Co., supra, and Nall, Admr., v. Louisville, etc., R. W. Co., supra, on principle, but the *59 facts of each, case are widely different. It is difficult to formulate a rule that will govern all cases of a given class. The particular facts and circumstances of each case must control its decision, for neither the law nor the principles of the law exist abstractly or independently of the facts. The end to be attained is justice, and to do justice is to render to every one his due. If one who is blameless has sustained an injury by fault or offense of another, he should have a remedy.
In the case at bar, it was the master’s duty to provide the appellee with a reasonably safe place in which to work; this duty was a continuing one, and required the appellant to keep it reasonably safe at all times. If the master, in performing one duty, violate another, he must answer for the consequences. Certain duties of the master were laid upon Crawley. He was given power to order and direct what work and how it should be done, and to designate the place where each employe should work. Under this authority he had the right to determine the place and the manner in which he himself should perform the servant’s duty which he owed to the master. It is charged that he, Crawley, ordered and directed another employe to enter a certain place and do work therein, and that he also entered such place for such purpose. In doing these things he was performing the master’s duty, and in that respect he was not a fellow-servant with the appellee. The execution of the master’s orders in conjunction with the manual acts of Crawley and Eller, rendered the place in which appellee was working dangerous, and injury actually befell him. Here was a violation of the master’s duty which the appellant owed to appellee, to keep the place in which he worked reasonably safe.
It is true there is no averment which, in terms, charges that appellee’s working place was rendered *60 dangerous or unsafe. Specific allegations are usually better than general statements. The complaint specifically sets out the facts which rendered the working place unsafe, and it further appears that appellee actually sustained injury while in such place. The place wheré injury actually occurs is usually an unsafe place.
This case is distinguishable from New Pittsburgh, etc., Co. v. Peterson, supra, for there the servant knowingly accepted a place of danger; he had the highest incentives, his personal safety, to put him on his guard and to ward off danger. The acts that increased his peril were starting the machinery, coupled with the failure to give him warning. Both of these, the starting of the machinery and the failure to warn, are such acts as usually and naturally devolve upon a fellow-servant. In this case, however, the appellee was in his accustomed place at work. It was ordinarily a safe place. There was nothing whatever to apprise him of insecurity or warn him of danger. By the combination of the master’s act and the acts of the master’s servants, he was suddenly and unexpectedly placed in great peril and received serious injury. In the first case there were some extenuating circumstances; here there are none.
Appellant further contends that the complaint is bad because it does not appear that Crawley was the sole person who stood in the master’s place. This contention is not well founded. The master can not shield himself from liability by dividing his duties and laying them upon various subordinates. The test is not whether all the master’s duties have been delegated, but whether any of them have been conferred.
We have reached the conclusion that at the time Crawley gave the order and direction and fixed the place in which he and Eller should work, he stood in the relation of master to the appellee. But it does not fol *61 low from this relation simply that the appellant is liable. It must further appear that the injury which the appel-. lee sustained was the proximate result of some conduct of the master. The immediate cause of the injury was the falling of the pieces of tubing on appellee’s back; such fall was caused by the persons at work in the narrow space coming in contact with them; the cause of the persons being engaged at work in that place was the order and disposition of Crawley. All of these things taken together rendered the place in which appellee was at work dangerous; and the master violated his duty in failing to keep appellee’s working place reasonably safe.
A cause is that which produces an effect. We have here' the result and the cause or causes which produced it. Every result is attended with an infinite number of preceding causes. The law is a practical science. It does not undertake to draw the wide distinctions of natural philosophy. The injury can usually be traced back to the immediate cause without much difficulty. The immediate cause is usually the result of so many divergent influences and facts that it would be futile to attempt to follow them. Hence, has sprung the rule, “in jure causa próxima non remota spectatur,— in law the near cause and not the remote is considered.” Here, too, like in the first question considered in this case, the difficulty arises in the application of the rule. Any cause to which legal responsibility is attached must have its origin in some responsible human agency. If certain forces be set in operation which will naturally and probably lead to a certain result, the predominant cause, or the efficient or procuring cause, is the one first set in motion, and the intermediate causes are but attendant incidents which mai’k the course of the efficient cause. In such instances the intermediate and incidental causes are not the proximate causes in a legal *62 sense. The law reaches back and passes by the intermediate causes and denominates the controlling cause, the proximate cause.
If, after the forces which have their origin in the efficient cause have been once set in motion, some other responsible agency or cause intervenes, which is of itself capable of producing the injury, then the course of the antecedent cause, is arrested, the chain ‘of causation broken, and the intervening cause becomes the proximate cause. Where two or more independent causes concur in producing an injury, and it can not be determined which is the efficient or controlling cause, or whether without their concurrence the injury would have happened at all, and a particular party is responsible for the consequences of one cause only, a recovery can not be had, because it can not be determined that the injury would have resulted without such concurrence. Butthelaw will not permit a wrongdoer to apportion, qualify or take advantage of his own wrong, and if an injury actually happened whilst his own wrongful act was in force and operation he ought not to be permitted to escape liability because there was a more immediate cause of the injury, especially if that immediate cause was put in operation by his own wrongful act. To entitle such party to exemption he must show not only that the same injury might have happened, but that it must have happened, if the act complained of had not been done. The case at bar falls within the rule last announced. Here a duty rested upon the appellant to keep the place in which appellee was working reasonably safe. The appellant required certain of its servants to engage at a special work in a narrow place, in close proximity to the wooden tubing, and that such servants should come in contact with such tubing was natural and probable. It is within the range of probability that the injury might have hap *63 pened without the command and direction of the appellant in requiring its servants to work in the narrow place; but this is not enough, it should appear that the injury must have occurred if the act complained of had not been done.
In Lane v. Atlantic Works, 111 Mass. 136, it was said that “the defendant is liable for the natural and probable consequences of .his negligent act or omission. The injury must be the direct result of the misconduct charged; but it will not be considered too remote if, according to the usual experience of mankind, the result ought to have been apprehended. The act of a third person, intervening and contributing a condition necessary to the injurious effects of the original negligence, will not excuse the first wrongdoer, if such act ought to have been foreseen.
“The original negligence still remains a culpable and direct cause of the injury. The test is to be found in the probable injurious consequences which were to be anticipated, not in the number of subsequent events and agencies which might arise.” Billman v. Indianapolis, etc., R. R. Co., 76 Ind. 166 (171); Terre Haute, etc., R. R. Co. v. Buck, Admx., 96 Ind. 346 (353); City of Crawfordsville v. Smith, 79 Ind. 308; Henry v. Dennis, 93 Ind. 452; Binford v. Johnston, 82 Ind. 426; Dunlap v. Wagner, 85 Ind. 529; Rogers v. Leyden, 127 Ind. 50; Davis v. Garrett, 6 Bing. 716; Cooley Torts, 76, n.; Harriman v. Pittsburgh, etc., R. R. Co., 12 N. E. Rep. 451; Louisville, etc., R. W. Co. v. Davis, 7 Ind. App. 222; Howe v. Ohmart, 7 Ind. App. 32.
We think it clear that the appellant violated its duty in failing to keep the appellee’s working place reasonably safe, and that the violation of this duty is the proximate cause of the injury. In reaching this conclusion, we do not overlook the fact that there may be gradations *64 and differences in rank between the various servants of one common master. But as above stated, it is not a question of rank or grade but a question of duty that determines the relative position between them. It is true 'that this opinion is based upon the relative position existing between Crawley and the appellee at a stated time, but we hold that Crawley was a vice-principal, and appellant must respond for the negligent acts done by him while so acting. The court did not err in overruling the demurrer.
Filed Mar. 29, 1894;
petition, for a rehearing overruled Nov. 15, 1894.
The special verdict finds every fact necessary to entitle the appellee to a recovery. There is no available error in the subsequent rulings of the court.
As this opinion has already been extended to an inordinate length we must decline to consider them in detail.
Judgment affirmed at costs of appellant.