## HOWARD, ADMR., Plaintiff-Appellant, v. PENNSYLVANIA RAILROAD CO., Defendant-Appellee.

Ohio Appeals, Second District, Franklin County.

No. 3799.   Decided July 8, 1946.

Hugh Huntington and E. B. Howard, Columbus, for Plaintiff-Appellant.

Burr, Porter, Stanley & Treffinger, Columbus, for Defendant-Appellee.

**OPINION**

By HORNBECK, PJ.

This is an appeal on questions of law from a judgment for the defendant-appellee upon a verdict of the jury in its behalf. The action was for damages for the alleged wrongful death of plaintiff-appellant's decedent, Angelo L. Ardit, caused by the negligence of the defendant company in the operation of its locomotive at its railroad crossing at Grandview Avenue in the City of Grandview Heights, Franklin County, Ohio.

Plaintiff's decedent was driving his automobile northwardly on Grandview Avenue approaching the railroad crossing where the collision occurred. It is undisputed that the Ardit automobile slowed down and came almost to a stop at a distance from the crossing varying from fifteen to twenty-five feet. The train involved in the collision was a freight moving in an easterly direction. The negligence averred was that the engine had no lighted headlight, that no watchman gave a warning of an approaching train and that the engineer failed to warn traffic of his approach by failing to either sound the whistle or ring the bell on the locomotive.

In the answer of defendant after denial that the locomotive was not lighted, an averment that the headlight on said locomotive was lighted; a denial that the automobile of plaintiff's decedent was struck by the locomotive and an averment that plaintiff's decedent drove his automobile into the side of the locomotive, it was admitted that no whistle on the locomotive was sounded and no bell rung prior to or at the time of the collision because of an ordinance No. 1941 of the City of Grandview Heights then in full force and effect which provided that,

"It shall be unlawful for any railroad company * * * to blow or sound any locomotive steam whistle or other steam whistle or to sound any locomotive bell within the corporate limits of the City of Grandview Heights, Ohio."

The answer also averred that at the time of and prior to the collision there was a crossing watchman stationed in the center of the highway north of the tracks and with a lighted lantern gave and continued to give a signal of the approach and passage of the locomotive and train. The contributory negligence of plaintiff's decedent was plead in three particulars.

Plaintiff, replying to the answer of defendant, admits the passage of the ordinance which is plead, but denies that it was in full force and effect on the date of the collision for the reason that it is in conflict with the statutes of Ohio in such cases made and provided, and is therefore void; and further says that if said ordinance is valid, which is denied, the same, by its terms, does not apply to railroad crossings.

On the trial, at the conclusion of the submission of the testimony, the Court sustained the motion of the defendant to strike from the petition the first and second assignments of negligence, namely, the failure to ring the bell and sound the whistle on the locomotive. The Court also, at the request of the defendant, submitted three interrogatories to the jury:

1. "Did Angelo Ardit drive or attempt to drive his automobile across the Grandview Avenue railroad crossing when a human flagman, Leonard Agriesti had given or continued to give a signal of the approach or passage of a train?   A.  Yes."

2. "If an ordinarily prudent person, when approaching the tracks of the Pennsylvania Railroad in Grandview Avenue under conditions like or similar to those which existed when Angelo Ardit approached said tracks on the occasion of the collision had looked effectively for a locomotive or train approaching Grandview Avenue, from the west, would such an ordinarily prudent person have discovered or become aware of the approach or presence of the locomotive or train in time to have stopped his automobile in a place of safety?   A.  Yes."

3. "Did Angelo Ardit as he approached the tracks of the Pennsylvania Railroad in Grandview Avenue, on the occasion of the collision look to the west for an approaching locomotive or train at a time when, at a place where, and in a manner that looking in that direction for that purpose would have been effective?   A.  No."

Eight errors are assigned:

1. (a)  The trial court erred in holding the Ordinance 19-41 of the City of Grandview Heights to be valid;

   (b)  In refusing to hold said Ordinance or a part thereof to be invalid; and

   (c)  In ordering plaintiff's first and second allegations of negligence to be stricken from the petition.

2. The trial court erred in submitting the interrogatories of defendant to the jury, and in returning them to the jury, with improper instructions.

3. The trial court erred in further charging the jury respecting decedent's alleged contributory negligence, after the general charge fully covering that matter had been given and after other proceedings had intervened.

4. The trial court erred in holding that it was the duty of the engineer to comply with the Ordinance so long as it had not been held invalid.

5. The trial court erred in holding that the defendant, the engineer was chargeable with only ordinary care when approaching a crossing on a dark night, knowing that warnings, required by statute, were not being given.

6. The trial court erred in his charge to the jury respecting the question of emergency or immediate danger.

7. The verdict was against the manifest weight of the evidence.

8. The trial court erred in overruling plaintiff's motion for a new trial.

The second, third, fifth, seventh and eighth assignments of error are not supported by the record.

The interrogatories were properly submitted and the answers to them clearly establish the negligence of plaintiff's decedent contributing as a proximate cause of his injury and death. There is ample support in the record for the answers to the interrogatories and for the general verdict.

In the light of the general verdict, we cannot say the interrogatories, or any one of them, were improperly submitted. If the general verdict had been for the plaintiff, a negative answer to interrogatory No. 2 would have presented a difficult question. However, the general verdict implies that physical conditions were such that either a watchman was on duty giving warning of the approach of the train, or the headlight on the locomotive was lighted and the train visible and that plaintiff's decedent had he looked effectively could have seen the approaching train. The use of the term "looked effectively" would have made it difficult of application if the jury had found that the accident occurred at a time when it was dark and the headlight was not lighted. The question includes the conditions existing at the time plaintiff's decedent approached the tracks which, in view of the implications of the general verdict, makes the answer consistent.

We pass upon the other errors assigned because it is mandatory for us to do so under §12248 GC.

Two questions are urged respecting the ordinance; that if valid it was not observed in that the employees of defendant company did not sound any warning either by whistle or bell in the situation presented which created an emergency and placed plaintiff's decedent in immediate danger.

It will be observed from the pleadings that the proviso in the ordinance that it shall not be construed to prohibit the blowing of any locomotive steam whistle or the sounding of any locomotive bell in cases of emergency or immediate danger is not brought into the case either by the answer or the reply thereto. The trial judge, however, took the ordinance in its entirety and held that because of the proximity of the automobile of plaintiff's decedent to the intersection of Grandview Avenue and the railroad tracks of defendant company, when observed by the engineer, and particularly, because the auto had almost come to a stop within fifteen to twenty-five feet from the tracks, no emergency was created.

The ordinance does not prohibit the blowing of the whistle or the sounding of a bell in case of emergency or any immediate

danger. If the fireman who apparently had charge of the bell had sounded it immediately prior to the collision, would he not have had a defense that the occupants of the automobile were in immediate danger, if charged with a violation of the ordinance? ·The record at least presents a factual question if an emergency was created wherein the occupants of the automobile were in immediate danger. The engineer testified that immediately before the collision with the automobile of plaintiff's decedent, two automobiles had just barely crossed ahead of the engine and that he thought he was going to strike them. When, then the automobile of plaintiff's decedent at about the same time approached the track, there was presented a factual issue whether the bell or the whistle or both should have been sounded and also if there was sufficient time to sound them effectively. ·Certainly, the next question for consideration of the jury had it found that an emergency did exist was whether or not the failure to sound the bell or whistle was a proximate cause of the collision. The automobile admittedly was moving slowly and the train was proceeding at a rate of speed from five to eight miles an hour. Neither witness who testifies on the subject says that the automobile came to a complete stop but manifestly it slowed down and the engineer may properly have concluded that it was coming to a complete stop. The failure to submit the question of the signals to the jury by the striking out of specifications of negligence relating thereto, though erroneous, could not have been prejudicial to the plaintiff on the state of the record because it appears that in the exercise of ordinary care plaintiff's decedent should have observed the locomotive, independent of any sounding of a whistle or bell.

But it is contended that the ordinance is invalid as in conflict with statute §8853 GC, a law of general application. In support of this claim appellant cites **Leis v Cleveland Railway Co., 101 Oh St 162, 2nd Syl.; Fitzgerald v City of Cleveland, 88 Oh St 338; City of Mansfield v Endly, 38 Oh Ap, 528.**

**Sec. 8853 GC** provides:

"Every company shall attach to each locomotive engine passing upon its road, a bell of the ordinary size in use on such engines, and a steam whistle. When an engine in motion and approaching a * * * town road crossing * * *the engineer or person in charge thereof, shall sound such whistle at a distance of at least 80 and not further than 100 rods from such crossing, and ring such bell continuously until the engine passes the crossing."

**Sec. 8854 GC** provides:

"The provisions of the next preceding section shall not

interfere with the proper observance of an ordinance passed by a city or village council regulating the management of railroads, locomotives and steam whistles thereon, within the limits of such city or village."

It is the claim of the appellee that the ordinance under consideration is valid as coming within the exception of that part of §8854 **GC** which provides that §8853 **GC** is not to "interfere with the proper observance of· an ordinance passed by a city or village council regulating the management of * * * locomotives and steam whistles thereon, within the limits of such city or village." The language clearly does support the ordinance as it affects the sounding of a whistle. Whether or not it extends to the prohibition of the sounding of a bell is a much closer and more difficult question. If the language of the ordinance prohibiting the sounding of a bell may be considered as regulating the management of locomotives, then it may be sustained. The Court probably so construed language of similar import in Pennsylvania Co. v. Hensil, 70 Ind., 569, 573, wherein the State's statute, Katzenberger v Lawo (Tenn.) 13 L. R. A., 185, relating to the giving of signals at road crossings provided that:

"Nothing therein contained shall be so construed as to interfere with any ordinance or bylaw that has been or may be passed by any city or town, regulating the management or running of engines or trains within such city or town."

The trial judge took this view in the instant case and we are not disposed to hold otherwise. We are in accord with the contention of appellant that §8853 **GC** is a law of general nature and that the ordinance must be considered in the light of **Article XVIII, Section 3, Ohio Constitution** and may not be given application if in conflict with general law.

No prejudicial error affecting the rights of plaintiff-appellant appearing in this case, the judgment will be affirmed.

WISEMAN and MILLER, JJ, concur.